UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 13-CV-21413-COHN/SELTZER

TERESITA SORRELS and JOSEPH
SORRELS (her husband),

 Plaintiffs,

v.

NCL (BAHAMAS) LTD., a Bermuda Company
d/b/a NORWEGIAN CRUISE LINE

 Defendant.
_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### I. Preliminary Statement

Plaintiff Teresita Sorrels was a passenger aboard Defendant NCL (BAHAMAS) Ltd.'s ("Norwegian") cruise vessel the *Norwegian Sky*. Mrs. Sorrels' claims that around midnight she slipped and fell on rainwater (a natural occurrence) while walking on an outdoor pool deck aboard the *Norwegian Sky*. Although she knew it had been raining throughout the afternoon and evening hours, Sorrels alleges that Norwegian was negligent because it failed to warn her of the open and obvious rainwater on the outdoor deck.

Norwegian asks the Court for summary judgment because it did not have (1) a duty to warn of the open and obvious condition of rainwater on the outdoor deck, (2) notice of the complained of condition, and (3) there was no dangerous condition in the first instance.

## II.     Statement of Undisputed Facts

1. Mrs. Sorrels was a passenger on Norwegian's cruise vessel the *Norwegian Sky*. (D.E. 1, Compl.).

2. She boarded *Norwegian Sky* at approximately 5:00 p.m., Friday, April 13, 2012. (Ex. "A," Teresita Sorrels' Dep. at 49:23-50:5).

3. It was raining when Sorrels boarded the *Norwegian Sky*, and she was aware that it continued to rain throughout the day. (*Id.* at 50:10-18 and 86:13-87:15)

4. She acknowledged that since it had been raining, the vessel's outer decks "would probably be wet." (*Id.* at 88:5-9).

5. After boarding the *Norwegian Sky*, Sorrels went to Deck 11 (an outdoor pool deck). Mrs. Sorrels observed that the wooden deck was wet from the rain but observed no rainwater puddles. (*Id.* at 85:2-5, 87:20-88:8, 88:20-24, 89:9-12, 93:6-15, 97:1-11 and 109:7-25)

6. At that time, Sorrels' was with her travel companion Marta Arbulu who also observed the outdoor deck's wet condition. (Ex. "B," Dep. of Marta Arbulu at 24:10-20 and 25:19-20)

7. Mrs. Sorrels had no difficulty walking on the wet teak deck and did not slip and fall. (Ex "A," Teresita Sorrels' Dep. at 98:1-18)

8. Similarly, Arbulu acknowledged she did not fall or have any difficulty walking on the wooden deck—she did not find any problem with the flooring. (Ex. "B," Dep. of Arbulu at 29:10-30:4)  Nor did she observe any other crewmember or passenger having any type of fall or accident on the wooden deck. (*Id.* at 29:23-30:1)

2

9. Mrs. Sorrels' daughter, Katrynna Sorrels, was also on the outdoor pool deck with her mother and Arbulu. She noted that it was raining and does not recall having an accident while on the pool deck. (Ex. "C," Dep. of Katrynna Sorrels at 4:24-5:4, 7:24-8:3, and 8:7-9)

10. Mrs. Sorrels understood that a wet floor tends to be more slippery than a dry floor. (Ex. "A," Teresita Sorrels' Dep. at 295:10-17) This sentiment was echoed by her daughter, Katrynna Sorrels, who testified:

> Q. … Has anyone ever told you that you should be careful walking on a floor that's wet?
>
> A. I don't recall. It's kind of obvious.
>
> Q. Okay. And when you say it's obvious, you know that?
>
> A. I guess you can say common sense.

(Ex. "C," Dep. of Katrynna Sorrels at 24:24-25:10)

11. In the early morning hours of Saturday, April 14, 2012, Sorrels was listening to music in a lounge aboard ship. (*Id*. at 71:8-72:10 and 290:11-22) At around 12:30 a.m., she left the lounge and proceeded to the teen center to pick up her daughter. (*Id*. at 127:20 – 129:22) En route to the teen center she passed through double doors and stepped out onto an open air wooden deck located on Deck 11 of the ship. (*Id*., 145:20-146:8, and 146:14-16) After proceeding through the double doors Sorrels walked approximately 100 feet from the port to the starboard side of the vessel and claims she slipped and fell on what she describes as a puddle of water. (*Id*.) Before she fell, she had not seen any puddles of water; the only

3

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

puddle she is aware of is the one at the spot of her fall. (*Id.* at 141:10-11, 142:7-11, and 163:4-18)  Mrs. Sorrels states that she did not see the puddle she allegedly fell on prior to her slip.  (*Id.* at 176:12-17, 178:12-15 and 178:23-179:1) She acknowledged that given the fact it was raining that day, the area could have been wet from rainwater. (*Id.* at 291:13 – 14)

      12.    Specifically, Sorrels described the condition of the outdoor wooden deck as follows:

> Some of the area could have been wet.  Some could have dried out.  I, you know, exactly, I couldn't remember.  I wouldn't remember.  *But considering that it was raining and, you know, that day, it would be logical to say that some of the areas were wet.* (*Id.* at 147:14 – 18 (emphasis added))

\*\*\*

> I can say that some of the areas may, may have looked wet. (*Id.* at 148:4-5)

\*\*\*

> I'm not saying that part of it, or not; I'm saying that I recollect that some of the deck was wet and I think -- you know, considering that it was raining that day, some of the deck would be wet and it would be safe to walk on that wet deck. (Ex. "A," Sorrels' Dep. at 149:1 – 5)

      13.    Additionally, Sorrels did not have any trouble seeing the condition of the outdoor flooring. (*Id.* at 162:5 – 8)  From the moment she proceeded through the double doors to the time she alleges she fell, Sorrels had an unobstructed view of the outdoor decking. (*Id.* at 179:7-12).

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131· Telephone: 305-379-3686 · Facsimile: 305-379-3690

14.   The record shows the alleged water on the outdoor deck was "plain," containing no soap or other slippery ingredient—there is no evidence that it was anything other than rainwater.

15.   Furthermore, the outdoor wooden deck at issue is not shown to have been unusual in any way.  In no sense is this a case of a hidden defect or a trap that would remain undetected by a person in the normal use of her faculties.

16.   Moreover, Norwegian did not have any notice of the alleged rainwater puddle described by Sorrels:

> Q.   Okay.  The puddle that you described to us where your accident -- where you -- at the spot where your accident occurred, as you sit here today, are you aware of anyone at Norwegian Cruise Line who knew that that puddle existed?
>
> A.   *No.*
>
> Q.   Okay. At any point in time has anyone from Norwegian Cruise Line told you that they were aware that there was a puddle at the area where you fell?
>
> A.   *No.*  That I can remember.  (*Id*. at 266:12 – 22 (emphasis added))
>
> ***
>
> Q.   The puddle that you observed when you were on the floor after the accident, do you know how long that puddle was there for?
>
> A.   *No.*  (*Id*. at 280:22-25 (emphasis added))

17.   Mrs. Sorrels did not see anyone else slip on the deck where her accident occurred.  (*Id*. at 292:15-17)

5

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

### III.   Memorandum of Law

A.   **Legal standard** [1]

The summary judgment standard, of course, is well known: whether there exists a genuine issue of material fact on the record as it now stands.  And there is no genuine issue of fact here on these points because Norwegian did not: (1) have a duty to warn of the open and obvious condition of rainwater on an outdoor deck, (2) notice of the complained of condition, and (3) there was no alleged dangerous condition in the first instance.

B.   **The Court should grant Norwegian summary judgment in its favor because it is not liable for open and obvious conditions and has no duty to warn of the same.**

The standard of care owed to passengers by a cruise ship owner is reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959); *Everett v. Carnival Cruise Lines, Inc.*, 912 1355, 1358 (11th Cir. 1990); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989).  A cruise ship operator is not an insurer of passenger safety; it does not become liable merely because an accident occurs. *Monteleone v. Bahama Cruise Line*, Inc., 838 F.2d 63, 65 (2d Cir. 1988); *Kornberg*, 741 F.2d at 1334.  A shipowner must give

---

[1]   This action is governed by the general maritime law of the United States; however, state law may be used to supplement the general maritime law as long as it does not alter or overrule maritime law. *Pope & Talbot Inc. v. Hawn*, 336 U.S. 406 (1953); *Everett v. Carnival Cruise Lines, Inc.*, 912 F.2d 1355, 1358 (11th Cir. 1990); *Norwegian Cruise Lines, Ltd. v. Zareno*, 712 So. 2d 791, 793 (Fla. 3d DCA 1998) (holding that state courts may entertain maritime causes of action and may apply state law to supplement federal maritime law if the state law does not conflict with federal law or interfere with uniformity).

6

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131· Telephone: 305-379-3686 · Facsimile: 305-379-3690

notice of dangers which are not apparent and obvious. *Luby v. Carnival Cruises, Inc.*, 633 F. Supp. 40 (S.D. Fla. 1986); *Gemp v. U.S.*, 684 F.2d 404 (6th Cir. 1982) (maritime law recognizes that a shipowner has no duty to warn of an open and obvious condition).

Mrs. Sorrels seeks to hold Norwegian liable for what she alleges was rainwater located on an outdoor pool deck which she ultimately knew about. Yet courts throughout the country, in granting summary judgment motions like the present, have determined that rainwater is an open and obvious condition for which there is no duty to warn. For example:

- *Coto v. Hyannis Air Serv., Inc.*, No. 2005-191, 2008 WL 5632264 (D. V.I. Jan. 31, 2008) – The plaintiff was an airline passenger who fell while disembarking from an aircraft during a rain storm. The plaintiff brought suit against the airline alleging it failed to warn her of the steps' slippery and dangerous condition. *Id.* at *1. The court granted the defendant's motion for summary judgment and found that the plaintiff knew it was raining and that the stairs were wet. *Id.* at *5. "Defendant's failure to warn Plaintiff of the obviously wet and slippery conditions, without more, is insufficient to establish that Defendant was negligent. *Wet stairs, as a result of rainy weather, cannot be considered a condition that requires warning.*" *Id.* (emphasis added)
- *Laughlin v. Auto Zone Stores, Inc.*, No. 08 MA 10, 2008 WL 4379569 (Ohio Ct. App. Sept. 22, 2008) – The plaintiff slipped and fell entering a store on a rainy day and sought to hold the store liable for negligence. *Id.* at *1. In granting the defendant's motion for summary judgment, the court found that inclement weather creates an open and obvious hazard which shields owners and occupiers from liability resulting from wet weather. *Id.* at *3. The court concluded that plaintiff failed to demonstrate that the defendant created an

7

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

unreasonably dangerous condition or that his accident was caused by a latent or concealed defect in the floor—a wet floor caused by rainwater is an open and obvious condition for which there is no duty to warn. *Id.* at *5; *see also Mounts v. Ravotti*, No. 07 MA 182, 2008 WL 4415819 (Ohio Ct. App. Sept. 26, 2008) (water on the steps leading to and from tenant's unit and the lack of a gutter on the building that contributed to the flooding of the steps was open and obvious to tenant such that, under open and obvious doctrine, tenant could not assert actionable claim of general negligence against landlord).

- *Hackworth v. U.S.*, 366 F. Supp. 2d 326 (D. S.C. 2005) – The plaintiff brought suit after she slipped and fell at a convenience store on rainwater which she alleged was present at the entrance to the store. *Id.* at 328. Again, the court granted defendant's motion for summary and held that even if there was a puddle on the floor of store just inside the entrance on a rainy day and the defendant had constructive notice of puddle, the defendant did not have a duty to warn the plaintiff of the open and obvious condition. *Id.* at 330 – 331. The plaintiff testified she purposely looked down as she entered the store in an attempt to be careful given the large amount of rain that had fallen. *Id.*

- *Kelly v. United States Dept. of Agriculture*, No. 05 CV 687, 2006 WL 2692714 (E.D. Ky. Sept. 13, 2006) – The plaintiff slipped and fell while proceeding down a wooden step which led to a boat ramp. *Id.* at *1. Like Sorell's, plaintiff claimed it had rained hard the night before his fall and that everything was wet. *Id.* The court concluded that summary judgment was proper in favor of defendant because of the open and obvious nature of rainwater. *Id.* at *3. The court reasoned that plaintiff knew or should have known the steps were slippery due to rainfall. *Id.* "The undisputed facts in the record lead to no other conclusion than that the condition which caused Plaintiff's fall was open and obvious. In short, a possessor of business premises is not liable for injuries suffered by another person due to an open and obvious condition on the premises." *Id.* at *4.

8

- *Emory University v. Smith*, 581 S.E.2d 405 (Ga. Ct. App. 2003). – The plaintiff slipped and fell on an outside "slippery and wet" wheelchair ramp while walking into a hospital on a rainy day. *Id*. The plaintiff admitted she knew before she stepped onto the ramp that it was sloped and there would be water on it from rain. *Id*. The court granted defendant's motion for summary judgment and held that "a slippery condition caused solely by rainwater is not a hazard because it presents no unreasonable risk of harm." *Id*. at 406.

Mrs. Sorrel's own testimony shows she was aware of the water and she appreciated the condition. As the above cases illustrate, there is no duty to warn of rainwater on an open air deck that is exposed to the elements.

The general maritime supports this analysis and conclusion. In *Luby*, 633 F. Supp. 40, a passenger aboard the defendant's cruise ship brought suit alleging she suffered injury when she tripped over a shower ledge. The shower curtain was drawn so that the ledge around the shower was unexposed. There was no lack of visibility and the bathroom floor was clean and dry. The plaintiff argued that the defendant breached its duty by concealing the ledge and by failing to warn her of its existence. In granting summary judgment, the *Luby* court held:

> It is clear then that the presence of the ledge behind the shower curtain was, or should have been obvious to [plaintiff] by the ordinary use of her senses…(citations omitted), and defendant is entitled to expect, as a matter of law, that [plaintiff] would perceive that which would be obvious to her upon the ordinary use of her senses. Accordingly, this Court concludes that the defendant did not breach its duty of care to [plaintiff] as a matter of law.

*Id*. at 42. In other words, the court applied the rationale that some conditions are so open and obvious that they can be held as a matter of law not to constitute a hidden

9

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131· Telephone: 305-379-3686 · Facsimile: 305-379-3690

dangerous condition. A ship owner is entitled to assume that a passenger will perceive that which would be obvious to her upon the ordinary use of her own senses, and is not required to provide notice or warning of an obvious condition, i.e., rainwater in the present case.

Nonetheless, water is something to expect on a pool deck! *Andrews v. Naber*, 59 So. 2d 869 (Fla. 1952) (holding that defendant was not required to remove puddle of water on walkway adjacent to pool or to keep it dry and had no liability to plaintiff for the slippery condition of the floor by the swimming pool. The court reasoned that it is a matter of common knowledge that water is constantly thrown upon walkways adjacent to or leading to or surrounding a swimming pool and that the walkways are in a slippery condition); *see also Kessler v. Thomas Corp.*, 73 So. 2d 415 (Fla. 1954) (Plaintiff slipped on a wet floor at an outdoor lunch counter adjacent to a beach and swimming pool. She claimed damages for personal injury sustained in her fall, but the trial court granted the defendant's summary judgment which was affirmed on appeal citing to *Andrews*, 59 So. 2d 869); *Tweedale v. City of St. Petersburg*, 125 So. 2d 920 (Fla. 2d DCA 1961) (Plaintiff slipped as he was entering a shower room before using a swimming pool operated by the City of St. Petersburg. The plaintiff contended the slippery floor constituted a hidden danger due to the swinging doors at the entrance of the shower room and a lack of warning signs. The appellate court affirmed summary judgment in defendant's favor noting the condition was neither latent nor concealed, but obvious and apparent, as the plaintiff knew he was entering a shower room of a public recreational facility, where

10

it may be accepted "as a matter of common knowledge that a public shower room floor, from its very nature when the room is in use, as in this case, might be in a slippery condition."); *Nichols v. Staybridge Suites*, No. 08 AP-773, 2009 WL 790248 (Ohio Ct. App. Mar. 26, 2009) (relying on *Andrews*, 59 So. 2d 869, and finding that entry of summary judgment was proper in case involving slip and fall on a wet pool deck because the hazard complained of (i.e. water) was open and obvious and defendant had no duty to warn of said condition).

**C. Mrs. Sorrels cannot prove Norwegian had actual or constructive notice of the alleged condition and cannot establish that Norwegian failed to exercise reasonable care under the circumstances.**

Under maritime law, a ship owner in navigable waters "owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Keefe*, 867 F.2d at 1321 (citing *Kermarec*, 358 U.S. at 632). A cruise ship owner is thus not an insurer of passenger safety—it does not become liable merely because an accident occurs—so the plaintiff bears the burden of establishing that some conduct or omission by the cruise line fell below the standard of ordinary reasonable care under the circumstances and that this caused the injury. *Monteleone*, 838 F.2d at 65–66.

> [T]he benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had *actual or constructive notice of the risk-creating condition*, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131· Telephone: 305-379-3686 · Facsimile: 305-379-3690

*Keefe*, 867 F.2d at 1322 (emphasis added).  In other words, it is simply not sufficient for liability that a defective or risk-creating condition exists on a ship; a passenger must prove the defendant had notice of the condition that caused an injury.  *Everett*, 912 F.2d at 1358; *Keefe*, 867 F.2d at 1320–21.

To survive summary judgment, therefore, Sorrels needs to demonstrate the existence of an issue of material fact as to whether Norwegian had actual or constructive notice of the complained-of condition.  She cannot because the only admissible evidence is that Norwegian did *not* have actual or constructive notice of the alleged puddle in the area where Sorrels fell *or* that it would present any danger to Sorrels.  *See Lee v. Regal Cruises, Ltd.*, 116 F.3d 465 (2d Cir. 1997) (a plaintiff's inability to produce competent evidence that the defendant had actual or constructive notice of the existence of a dangerous condition renders the defendant entitled to summary judgment in its favor); *Keefe*, 867 F.2d 1318 (noting that the absence of a finding as to the length of time the "slippery spot" allegedly encountered by the plaintiff had existed prior to her fall precluded entry of judgment in favor of the passenger plaintiff); *see also Adams v. Carnival Corp.*, No. 08-22465, 2009 WL 4907547 (S.D. Fla. Sept. 29, 2009).  An extensive body of authority supports the entry of final summary judgment in such a situation.

In *Everett*, 912 F.2d at 1357, plaintiff sued a cruise line over injuries she sustained when she tripped over a metal threshold cover on a fire door, a danger allegedly created by the cruise line.  The trial court instructed the jury that the cruise line could

12

be liable for negligently creating or maintaining the premises.[2]  *Id*. at 1358.  The cruise line objected to this instruction, arguing that liability must be predicated on notice.  *Id*.  The district court disagreed and gave the instruction to the jury.  *Id*.  The Eleventh Circuit Court of Appeals reversed, holding that there is no cause of action for merely creating, maintaining, or allowing a dangerous condition to exist.  *Id*.  The court further noted that as a prerequisite to imposing liability against the cruise line, a plaintiff must not only show the existence of an unsafe condition, but also prove the defendant had actual or constructive notice of the condition.  *Id*.  The court found error in the jury instructions because there was a possibility the jury may have erroneously found the cruise line liable for the mere creation or maintenance of the defect.  *Id*.

In *Lee*, 116 F.3d 465, the plaintiff-passenger allegedly fell because of water and ice cubes on a staircase.  *Id*. at *1.  The shipowner moved for summary judgment, asserting that there was no evidence—which the plaintiff conceded—as to how the ice cubes and water came to be on the staircase and how long they had been there.  *Id*.  The district court granted the shipowner's motion for summary judgment, *id*. at *2, and the Second Circuit Court of Appeals sustained the trial court's decision, holding that the cruise line did not have actual or constructive notice of a defective condition existing for sufficient time to invite corrective measures.  *Id*.

Similarly, in *Cummiskey v. Chandris, S.A.*, 719 F. Supp. 1183 (S.D.N.Y. 1989), the plaintiff-passenger slipped and fell in the ship's bar and claimed the shipowner

---

[2]   The jury was also instructed that the cruise line could be found liable if it had actual or constructive notice of the defect.

13

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131· Telephone: 305-379-3686 · Facsimile: 305-379-3690

was negligent in allowing the floor to become wet and slippery. *Id.* Even though she alleged that a uniformed person (presumably a crewmember) apologized about the wet floor, thus giving rise to actual notice, *id.* at 1187, the court concluded that there was no actual notice of any dangerous condition and no evidence that would allow the inference that the unidentified person actually observed the wetness or the accident. *Id.* The plaintiff also claimed constructive notice, deriving it from the testimony of the plaintiff's travel companion that "the rug was wet …. The rug was always wet." However, the court found:

> [P]laintiff slipped on the tile, not the rug. The fact that [plaintiff's travel companion] may have observed wet spots on the rug the day prior to the accident does not create any inference that defendants had constructive notice of wetness on the tile. Lacking such evidence, any effort by plaintiff to demonstrate that the pool drippings or drink spillage was a chronic problem resulting in constructive notice would be pure speculation.

*Id.* at 1188. Accordingly, the court held that the plaintiff failed to produce any evidence to demonstrate a genuine factual dispute with respect to the defendant's actual or constructive notice of wetness and granted summary judgment in defendant's favor. *Id.* at 1191.

The Southern District of Florida has also affirmed the requirement of notice in *Mercer v. Carnival Corp.*, No. 08–20550, 2009 WL 302274 (S.D. Fla. Feb. 9, 2009). There the plaintiff-passenger stepped out of the shower in his cabin, walked through the bathroom, into the cabin, and slipped and fell on the hardwood floor. *Id.* He

14

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131· Telephone: 305-379-3686 · Facsimile: 305-379-3690

alleged Carnival breached its duty of reasonable care by creating a dangerous condition and failing to warn of the slipperiness of the floor. *Id*.

Granting summary judgment for Carnival, the court found that the plaintiff failed to "provide any evidence to support his contention that [Carnival] had notice of the allegedly dangerous condition." *Id*. at *2. "Instead, Plaintiff merely states that, due to the close proximity of the hardwood floor to the bathroom, Defendant must have known the moisture might accumulate on the hardwood floors or that passengers might walk around with wet feet, and that it would create a dangerous condition." *Id*. "Again, the applicable standard of reasonable care requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the dangerous condition. Plaintiff, however, provides no factual support for his allegation that Defendant had any notice of the allegedly dangerous condition." *Id*. (citations omitted).

In *Monteleone*, 838 F.2d at 63–64, which is on point regarding notice, the plaintiff-passenger alleged she tripped over a protruding screw, causing her to fall down a flight of stairs. The court held that a shipowner is responsible for defective conditions aboard ship only when it has actual or constructive notice of them, reasoning that to find liability for merely allowing a defective condition to exist would make the shipowner an insurer of the passenger's safety. *Id*. at 65.

It is uniformly clear that as a prerequisite to imposing liability, Sorrels must not only show the existence of an unsafe condition, but must also prove Norwegian had

15

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

actual or constructive notice of the condition. Mrs. Sorrels is unable to produce any evidence of either.

First, rainwater on an outdoor deck is not a dangerous condition in and of itself. As noted by the court in *Rodas v. Bi-Lo, Inc.*, No. 607CV029, 2008 WL 2415269, at *3,

> When it rains, people track rainwater into a building's entrance and some of it winds up on the floor. This is common knowledge and thus all are charged with knowledge of the slip–and–fall danger that it represents. Hence, it is not an *unreasonable* risk but an *expected* risk. And it certainly is not a risk over which an owner would have knowledge superior to that of an entering pedestrian.

*See also Partelow v. Edgar*, 219 So. 2d 72, 73-74 (Fla. 4th DCA 1969) (finding that slippery terrazzo floors do not always constitute dangerous hazards, thus giving rise to liability under any set of circumstances; in the absence of a showing of some negligence on the part of a defendant, there can be no liability). And the wooden deck at issue is not shown to have been unusual in any way. In no sense is this a case of a hidden defect or a trap that would remain undetected by a person in the normal use of her faculties. " '[*T*]*he mere fact that one slips and falls on a floor does not constitute evidence of negligence, nor does the fact that a floor was slick make the owner liable.*' " *Wish v. MSC Crociere S.A.*, No. 07-60980-CIV, 2008 WL 5137149, at *3 (S.D. Fla. Nov. 24, 2008) (emphasis added); *see generally Andrews v. Naber*, 59 So. 2d 869 (Fla. 1952) (holding that the defendant was not required to remove puddle of water on walkway adjacent to pool or to keep it dry and had no liability to

16

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131· Telephone: 305-379-3686 · Facsimile: 305-379-3690

plaintiff for the slippery condition of the floor by the swimming pool. The court reasoned that it is a matter of common knowledge that water is constantly thrown upon walkways adjacent to or leading to or surrounding a swimming pool and that the walkways are in a slippery condition).

Second, there is no evidence Norwegian had any notice of the alleged dangerous condition:

> Q. Okay. The puddle that you described to us where your accident -- where you -- at the spot where your accident occurred, as you sit here today, are you aware of anyone at Norwegian Cruise Line who knew that that puddle existed?
>
> A. *No.*
>
> Q. Okay. At any point in time has anyone from Norwegian Cruise Line told you that they were aware that there was a puddle at the area where you fell?
>
> A. *No.* That I can remember. (Ex. "A," Sorrels' Dep. at 266:12 – 22 (emphasis added))
>
> ***
>
> Q. The puddle that you observed when you were on the floor after the accident, do you know how long that puddle was there for?
>
> A. *No.* (Ex. "A," at 280:22-25 (emphasis added))

The present matter is in some respects akin to the facts of *Wish,* 2008 WL 5137149. In *Wish*, the plaintiff–passenger was walking across the open air pool deck to return to her state room. *Id.* at *1. At the time, it was raining and the pool deck was wet. *Id*. The plaintiff fell and suffered injury. *Id.* In finding for the defendant cruise

17

line, the court held that assuming *arguendo* that it was not raining at the time the plaintiff fell, there was no evidence to suggest how long the water had been on the pool deck before the plaintiff's fall. *Id*. at *2. "[A]s there is simply no evidence showing that the rainwater had been sitting on the pool deck for an unreasonable amount of time or that Defendant knew there was rainwater on the deck and acted negligently in failing to remove it." *Id*. The court found "that while an unfortunate accident occurred, Defendant was not negligent and thus [could not] be held liable." *Id*. at *3.

In sum, Sorrels cannot prove Norwegian had actual or constructive notice of the alleged condition and cannot establish that Norwegian failed to exercise reasonable care under the circumstances in the first instance.

## IV.   Conclusion

The problem presented by this case is of such ancient vintage—and of such perennial recurrence—that even the Romans had a rule for it: *Nemo commodum capere potest de injuria sua propria*, that is, in the translation of the current edition of Black's Law Dictionary (9th ed. 2009), "No one can derive benefit from his own wrongs" (p. 1849). Yet that is precisely what Sorrels seeks to do; the undisputed facts show Norwegian did nothing wrong and the proximate cause of Sorrels alleged injury was her own failure to exercise reasonable care.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131· Telephone: 305-379-3686 · Facsimile: 305-379-3690

Respectfully submitted,

/s/ Jerry D. Hamilton
Jerry D. Hamilton, Esq.
Florida Bar No. 970700
jhamilton@hamiltonmillerlaw.com
Hector V. Ramirez
Florida Bar No. 484857
hramirez@hamiltonmillerlaw.com
Michael J. Dono
Florida Bar No. 0576492
mdono@hamiltonmillerlaw.com
HAMILTON, MILLER & BIRTHISEL, LLP
Attorney for Defendant
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131
Telephone :   305-379-3686
Facsimile:    305-379-3690

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 11, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of Electronic Filing.

/s/ Jerry D. Hamilton
Jerry D. Hamilton

## SERVICE LIST

| | |
|---|---|
| Robert D. Peltz, Esq. | Jerry D. Hamilton, Esq. |
| Peltz@leesfield.com | jhamilton@hamiltonmillerlaw.com |
| Carol L. Finklehoffe | Hector V. Ramirez, Esq. |
| Finklehoffe@leesfield.com | hramirez@hamiltonmillerlaw.com |
| Leesfield & Partners, P.A. | Hamilton, Miller & Birthisel, LLP |
| 2350 South Dixie Highway | 150 S.E. Second Avenue, Suite 1200 |
| Miami, Florida 33133 | Miami, Florida 33131 |
| Telephone:   305-854-4900 | Telephone:   (305) 379-3686 |
| Facsimile:   305-854-8266 | Facsimile:   (305) 379-3690 |
| ***Counsel for Plaintiff*** | ***Counsel for Defendant*** |

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131· Telephone: 305-379-3686 · Facsimile: 305-379-3690