UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 13-CV-21413-COHN/SELTZER

TERESITA SORRELS and JOSEPH
SORRELS (her husband),

      Plaintiff,

v.

NCL (BAHAMAS) LTD., a Bermuda
company d/b/a NORWEGIAN CRUISE LINE,

      Defendant.

_____/

### DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    Defendant, NCL (BAHAMAS) LTD. ("Norwegian"), by and through its undersigned counsel, and pursuant to the applicable Federal Rules of Civil Procedure, hereby files this Reply in Support of its Motion for Summary Judgment, and states as follows:

### Introduction

    In her Response, Plaintiff argues she did not slip because of a puddle and is not asserting she "slipped and fell on rainwater." The Response asserts the lawsuit is based on the fact that the Norwegian Sky [deck 11] "had a dangerously low slip resistance in certain parts when wet." Plaintiff's contention is that Norwegian failed to warn her that portions of the deck were slippery when wet. In other words, Norwegian failed to warn Plaintiff that at the particular spot of her slip and fall, the slip resistance could be different than other areas of the deck so as to cause a dangerous condition. However, there is no record evidence of Norwegian having prior knowledge (notice) of varying slip resistance on the deck causing a dangerous condition, whether at the spot of the slip and fall or anywhere else.

    Plaintiff relies on Ronald Zollo's assertion that a variance in slip resistance created a trap and false sense of security to explain why Plaintiff was able to safely walk 100-130 feet on the wet deck. However, Plaintiff provides no evidence that Mr. Zollo conducted any coefficient of friction testing (because he didn't) on the 100-130 feet of wet teak deck Plaintiff walked on

immediately preceding her fall.  There is no evidence of a constant slip resistance level on the 100-130 feet of wet deck Plaintiff walked on or that it varied from the spot of the slip and fall. Therefore, argument that Plaintiff's incident was caused by a variance in slip resistance creating a trap, Norwegian knew of this and failed to warn is devoid of supporting evidence.

Plaintiff's Response cites to her deposition testimony, which amounted to nothing more than her admission of lack of knowledge and self-serving assumptions.  Norwegian objected to production of the CCTV footage capturing the entire incident so as to obtain Plaintiff's unrefreshed recollection of the incident at deposition.  Ms. Sorrel's lack of knowledge at deposition was not due to the passing of 15 months from the date of accident.  Rather, it appears to have been a strategy to avoid testifying in a manner inconsistent with yet unseen CCTV footage of the incident.

### Plaintiff's Statement of Facts

**Paragraph 18**:     Norwegian denies Plaintiff's assertions in paragraph 18 of Plaintiff's Response in Opposition.  There is no evidence that Norwegian was on notice of "the slippery nature of portions of the teak flooring located on deck 11." The cited testimony of Solange Winifred and Milan Rai do not support the assertion that Norwegian was aware of any issue with a particular "portion" of the deck.     Ms. Winifred testified that she was not told the teak deck could get slippery; and deferred to the deck department with respect to the when and where of the posting of signs. *See* Dep. of Winifred, pp. 24-25, attached as **Exhibit A**.

**Paragraph 19**: Norwegian denies Plaintiff's assertions in paragraph 19 of Plaintiff's Response in Opposition.  Ms. Winifred's cited testimony does not say that Norwegian was aware of the slippery nature of the teak flooring located at deck 11, much less say that any particular area had a different slip resistance, which Plaintiff is now alleging Norwegian failed to warn her about.  The cited examination of Winifred dealt with her duties at the restaurant and began on page 17.  Ms. Winifred testified that she would only be involved in cleaning up spills and that she would put up a sign because the floor could get slippery when wet [due to a spill].  The logical meaning of this testimony is that a foreign substance falling on the floor can make an otherwise reasonably safe deck more slippery-the key ingredient being the foreign substance/liquid.  Ms. Winifred's testimony in no way shows that any of her supervisors had any

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

knowledge that any particular part of the deck was more or less slippery than another. *See* Dep. of Winifred, pp. 17-19 (**Exhibit A**).

 **Paragraph 20:** Norwegian denies Plaintiff's assertions.   The cited testimony only indicates that these particular witnesses did not recall or were not aware of a warning sign and not that there were none.

**A.    Mr. Zollo did not measure the coefficient of friction at the specific location of Sorrels' fall.**

 Mr. Zollo's deposition testimony fails to raise an issue of fact because nowhere in it does he state that he tested the actual location where Sorrels claims to have fallen.  In fact, Sorrels' in her Response concedes this fact. (D.E. 66 at p.3, n.4).  Mr. Zollo testified:

> Q.    And then you did your first test in the area where you actually thought she fell, correct?
>
> A.    No, I did all the tests in the area where I thought she fell.  Now, you have to be careful though, because I'm not saying I know the plank that she stepped on when she fell.

(Zollo Dep. attached as **Exhibit B** at 153:8-15)  In *Sarmiento v. C & E Associates*, 40 A.D.3d 524, 837 N.Y.2d 57 (1st Dept. 2007) plaintiff claimed to have fallen on a wet marble staircase because the coefficient of friction was below 0.5. The appellate court granted defendant's summary judgment, finding, "the expert's affidavit ... Only vaguely asserts that he measured the [static coefficient of friction] at various locations in the proximal area of the accident on several treads. In the absence of any evidence that the specific location of this accident – i.e. the second step of the stairwell in question – was tested... No triable issue is raised as to the defective condition of the steps." *Sarmiento*, 40 A.D.3d at 526 – 527; *see also Murphy v. Conner*, 84 N.Y.2d 969, 972 (1994) ("[Plaintiff's] expert's examination of a part of the general area is insufficient to preclude summary judgment for defendants."); *Lindeman v. Vecchione Const. Corp.*, 275 A.D.2d 392, 393 (2d Dep't 2000) ("[T]he affidavit [of plaintiff's expert], which was silent as to specifically…what portion of the floor was inspected after the accident, is conclusory and insufficient to establish a triable issue of material fact.").

 Mr. Zollo's testimony, like those of plaintiffs' experts in *Sarmiento*, *Murphy* and *Lindeman*, fails to state the portion of the floor where he took his measurements.  Rather, Mr. Zollo simply tested the area in the general vicinity of where the alleged accident occurred.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Accordingly, his opinions failed to raise an issue of material fact.  Without establishing the slip resistance where she actually slipped, Plaintiff cannot establish her contention of a variance of slip resistance causing a trap and false sense of security.

**B.**     **Mr. Zollo's testing (performed in what he determined to be the vicinity of Sorrels' fall) shows that the teak deck was not defective and did not create an unreasonable risk of harm.**

Mr. Zollo first tested the teak deck onboard the Norwegian Sky in dry conditions. All test values for the dry test were in the 0.8 range. (Ex. "B" at 149:16 – 25).  Mr. Zollo then performed four coefficient of friction tests in the area he judged to be where Sorrels fell.  The first test in wet conditions yielded results of .61, .70, .54, and .55, which averages .6. (Ex. "B" at 154:7-14 and 168:2-4).  The second test was performed in a puddle and yielded results of .62, .46, .50, and .54, which averages .53.  (Ex. "B" at 166:6-11 and 168:5-13).  In the third test, Zollo attempted to test the values on the rubber located in between the teak deck planks.  He deviated from the standard for value testing and instead performed seven tests which yielded values of .51, .6, .46, .43, .48, .64, and .51, which nonetheless average to .52. (Ex. "B" at 169:10-172:25).  After having performed these four tests and achieving average values over .50, Zollo noticed what he described to be a "suspicious" looking plank or piece of wood and decided to test it.  He obtained values below 0.5.  However, by Zollo's own acknowledgment, the plank was not just wet with rainwater but had on it a foreign substance:

> Q.     And in your earlier testimony, you said you saw a plank or a piece of wood that looked suspicious, and that's what you went to go test?
>
> A.     Yes.
>
> Q.     Now, what was suspicious about it?
>
> A.     Well, it felt, it felt a little on the slimy side, a little slippery in that sense, but that's not a scientific test, so, I undertook the testing on that area in different directions, west, south, east, west, north -- no, west, north, I think, north twice. (179:4-14)
>
> Q.     You said the plank felt slimy?
>
> A.     Yes.
>
> Q.     Did the other planks that you tested feel slimy when they were wet?
>
> A.     No, not that I recall, and it may not have been restricted to just one plank, but I did another test at another portion of the ship. (181:6-12)

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Q.      Can you tell me what the slimy substance was?A.    No. (181:21-23)

Q.      So, we have, so what you found is that you had one plank, which fell below .5 in the testing?

A.      I'm not sure if it was one plank or more than one plank.

Q.      Well, did you test these values, these values represent the testing of one plank, doesn't it?

*** 

Q.      You don't know?

A.      I don't know.

Q.      You did the testing?

A.      Correct.

Q.      And you don't know?

A.      I don't know.  With certainty, I can't answer. (182:16-20 and 183:1-6)

Q.      You can't say which plank you tested to get the values?

A.      I can't as I sit here.

Q.      And you can't tell me if it was more than one plank?

A.      Correct.

Q.      And if it was more than one plank, you didn't do the four directional testing?

A.      Correct. (183:16-24).

Mr. Zollo is picking the scenario most favorable to Sorrels by choosing the lowest coefficient of friction from the range of wet decking.  But the selection of the lowest value of the coefficient of friction that was possible on the day Zollo tested the specific section of decking cannot withstand scrutiny. This is critical because Sorrels bears the burden of proof on causation. Obviously, acceptance of the lowest coefficient of friction would be in effect allowing the arbitrary choice of a low point value because the true possible range is in fact broader than that selected by Zollo.

- 5 -

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

In sum, there is no evidence the teak deck had a dangerously low slip resistance as Sorrels would like the Court to believe.[1]

**C.    Mr. Zollo tested the area nearly a year and half after Sorrels' accident.**

Mr. Zollo's deposition testimony is also deficient because his opinion is based on an inspection made approximately a year and a half after Sorrel's accident and Sorrels has submitted no evidence that the floor was in the same condition at the time of the inspection as it was at the time of the subject incident. *See Cibelli v. Episcopal Diocese of New York*, 2001 WL 1422127 (Sup. Ct. Richmond County 2001) (stating that "[P]laintiff submits the affidavit of Stanley Fein…Not only is Mr. Fein's conclusion unsupported by any proof, but it is also based upon inspection which occurred three years after the incident."); *Sarmiento*, 40 A.D.3d at 526 (nine-month gap between accident and inspection).

**D.    There is no evidence of any contaminate existing on the deck at the time of Sorrels' incident.**

In order to defeat a motion for summary judgment a party must come forward with more than mere speculation or conjecture as to the true nature of the facts. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). Hence, with regard to Sorrels' theory that suntan lotion was present on the decking on the date of the incident (*see, e.g.*, Resp. at p.8, ¶14), it is significant to note that this theory is no more than an assumption on Sorrels' part based on speculation rather than evidence. There is simply no evidence on the record of any contaminant being present on the decking where Sorrels fell. Hence, because Sorrels' theory on the presence of a foreign substance having affected the coefficient of friction on the decking on the date in question is mere speculation, without any evidentiary support, and is without any basis and is insufficient to justify the denial of summary judgment. There is no evidence of any substance that may have been a factor in Sorrels' fall.

**E.    Substantial Similarity Doctrine**

In *Tran v. Toyota Motor Corp.*, 420 F.3d 1310 (11th Cir. 2005) the Eleventh Circuit Court of Appeals explained the "substantial similarity doctrine" as follows:

---

[1]    Norwegian has moved to strike Zollo as an expert in this case (D.E.60). Without the admission of his testimony, Sorrels cannot meet her burden of proof. If the motion is granted, clearly Norwegian's initial burden, the pointing out of an absence of a genuine issue of material fact under *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), has been satisfied. Absent Zollo's purported expert testimony, Sorrels does not have a scintilla of evidence supporting her theory of the case.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

> The doctrine of substantial similarity applies when one party seeks to admit prior accidents… involving the opposing party, in order to show, for example notice, magnitude of the danger involved, the [party's] ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation. In order to limit the substantial prejudice that might inure to a party should these past occurrences or accidents be admitted into evidence, courts have developed limitations governing the admissibility of such evidence, including the "substantial similarity doctrine." This doctrine applies to protect parties against the admission of unfairly prejudicial evidence, evidence which, because it is not substantially similar to the accident or incident at issue, is apt to confuse or mislead the jury.

*Tran,* 420 F.3d at 1316 (citing *Heath v. Suzuki Motor Corp.,* 126 F.3d 1391, 1396 (11th Cir. 1997) (quoting *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661 (11th Cir. 1988) (internal citation and footnotes omitted; alteration in original)); *see Hessen v. Jaguar Cars, Inc.,* 915 F.2d 641, 649 (11th Cir. 1990). Thus, under the substantial similarity doctrine,

> [e]vidence of prior accidents or occurrences is only admissible if, first, the proponent of the evidence shows that conditions substantially similar to the occurrence in question caused the prior accidents. *Heath,* 126 F.3d at 1396 n.12; *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988). Second, the prior accidents must not be too remote in time. *Jones,* 861 F.2d at 662. Remoteness is within the trial judge's discretion. *Id.* Third, the admission of other occurrences is subject to the reasonable discretion of the trial court as to whether the prejudice or confusion of issues, which may probably result from the admission of such evidence, is disproportionate to the value of the evidence. *Heath,* 126 F.3d at 1396 n.13.

*Reid v. BMW of N. Am.,* 464 F.Supp.2d 1267, 1271 (N.D.Ga.2006).

Norwegian asserts the alleged substantially similar incidents are inadmissible because Sorrels had failed to establish the circumstances involved in those alleged incidents are substantially similar to the circumstances in the instant case. They are inadmissible because even if substantially similar, which they are not, the form of the evidence is hearsay and the plaintiff has failed to show an applicable exception. Moreover, the Court should not find them reliable based on the lack of submitter attestation. *See, e.g., Hendricks v. Ford Motor Co.*, 4:12CV71, 2012 WL 4478308, at *2 n.4 (E.D. Tex. Sept. 27, 2012) (finding that evidence in the form of documents would be inadmissible to show notice and defect because there was not enough information for the plaintiff to prove the accidents were substantially, or even reasonably, similar. The documents demonstrated that they contained only a few sentences describing the incidents. "Such information is insufficient to make a determination as to whether the events

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

were reasonably or substantially similar to the event in the instant case."); *Herbst v. L.B.O. Holding, Inc.*, 783 F. Supp. 2d 262, 269-70 (D.N.H. 2011) (bare-bones accident reports of incidents at resort, which did not indicate exact cause of injuries were inadmissible); *Klonowski v. Int'l Armament Corp.,* 17 F.3d 992, 996 (7th Cir. 1994) (trial court acted within its discretion when it excluded evidence of the absence of prior accidents in a products liability case where defendant failed to lay adequate foundation that all products sold were substantially similar in design).

Substantial similarity will be decided by this Court by the factors set out above and not how Mr. Zollo choses to define it.  There is no case law stating that substantial similarity is defined from "an engineering standpoint," as Plaintiff would have this Court do.

Furthermore, what Mr. Zollo deems to be substantially similar is all encompassing- any and all incidents involving a teak deck and a liquid contaminate are substantially similar.  For Mr. Zollo, the exact location, demographic of the person involved, alcohol involvement, footwear used and its condition, type of contaminate, i.e., water, ice cream or suntan lotion, activity engaged in, whether walking or playing table tennis, are simply irrelevant.  Based on this strained interpretation of substantial similarity, Mr. Zollo and Plaintiff argue that Sorrels' slip and fall while walking in heels on a rainwater wet deck is substantially similar to the following example of disclosed prior incidents:

- A slip on a patch of ice cream that had been spilt
- Passenger playing table tennis slipping on an unknown foreign substance
- Passenger coming out of Jacuzzi fell on her flip flops
- Passenger wearing worn-down sandals slipping on an unknown foreign substance
- Passenger walking through a barricaded area and slipped on a mopped floor

The information available regarding the prior incidents disclosed per court order show that in most instances they are not substantially similar.  In the remaining instances, the information is too limited and a determination cannot be made.  Plaintiff seeks to avoid her responsibility in establishing substantial similarity by arguing that the deficiencies are not her fault as she had to rely on Norwegian.  Presumably, Plaintiff would have advised this Court of her effort to gather additional information, which is lacking in her Response.

The chart Plaintiff attached as Exhibit 4 should be discarded by the Court as it is admittedly not evidence, much less admissible evidence.  It is of no aid to this Court as it is simply Plaintiff's counsel's conjecture based on general and vague descriptions of incident

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

locations provided by dozens of different passengers and crewmembers with no agreed-upon terminology, i.e., how far back is aft.

## Conclusion

Based on the record evidence before this Court, Norwegian respectfully submits it is entitled to summary judgment.   Norwegian has shown that the condition at the time of the incident was not dangerous and was open and obvious and requiring no warnings.   Plaintiff has failed to show a genuine material issue of fact on the issue of notice for the specific alleged hazard she is claiming Norwegian failed to warn her of.

**WHEREFORE**, Defendant, NCL (BAHAMAS) LTD., respectfully requests this Court grant its Motion for Summary Judgment, and such further and other relief this Court deems just and proper.

Respectfully submitted,

/s/      Jerry D. Hamilton
Jerry D. Hamilton (Florida Bar No. 970700)
Hector V. Ramirez (Florida Bar No. 484857)
Jessica Calvo (Florida Bar No. 76857)
HAMILTON, MILLER & BIRTHISEL, LLP
Attorneys for Defendant
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131-2332
Telephone:     305-379-3686
Facsimile:     305-379-3690

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 7, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of Electronic Filing.

/s/     Jerry D. Hamilton
Jerry D. Hamilton

## SERVICE LIST

Robert D. Peltz, Esq.
Florida Bar No. 220418
peltz@leesfield.com
Carol L. Finklehoffe, Esq.
Florida Bar No. 15903
finklehoffe@leesfield.com
Leesfield & Partners, P.A.
2350 South Dixie Highway
Miami, Florida 33133
Telephone:    305-854-4900
Facsimile:    305-854-8266
***Counsel for Plaintiff***

Jerry D. Hamilton, Esq.
jhamilton@hamiltonmillerlaw.com
Hector V. Ramirez, Esq.
hramirez@hamiltonmillerlaw.com
Jessica Calvo, Esq.
jcalvo@hamiltonmillerlaw.com
HAMILTON, MILLER & BIRTHISEL, LLP
150 S.E. Second Avenue, Suite 1200
Miami, Florida 33131
Telephone:    (305) 379-3686
Facsimile:    (305) 379-3690
***Counsel for Defendant***

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690