UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-21413-CIV-COHN/SELTZER

TERESITA SORRELS and
JOSEPH SORRELS,

    Plaintiffs,

v.

NCL (BAHAMAS) LTD., d/b/a
NORWEGIAN CRUISE LINE,

    Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE
### EXPERT TESTIMONY AND MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant's Motion to Strike Plaintiff's Expert, Ronald Zollo [DE 60] ("Motion to Strike") and Defendant's Motion for Summary Judgment [DE 61]. The Court has carefully reviewed these Motions and all related filings and is otherwise fully advised in the premises.[1]

---

[1] Also pending are several other motions: Defendant's Motion to Dismiss Count II of Plaintiffs' Complaint [DE 11], Plaintiffs' Motion and Supplemental Motion to Strike and/or Exclude Defendant's Expert Bryan Emond [DE 57; DE 63], Plaintiffs' Motion and Supplemental Motion to Strike and/or Exclude Defendant's Expert Catherine Borowski [DE 58; DE 62], Defendant's Motion to Strike Plaintiffs' Late Disclosed Experts and/or Who Have Failed to Comply with Rule 26 [DE 59], Plaintiffs' Motion to File a Brief Sur-Reply in Opposition to Defendant's Reply in Support of Its Motion to Strike Plaintiffs' Late Disclosed Experts and to Supplement the Record [DE 82], Plaintiff's Motion in Limine to Exclude Evidence or Argument of Collateral Sources [DE 86], Plaintiff's Motion in Limine to Preclude Evidence or Argument Regarding the Number of Passengers Who Walked Upon the Subject Teak Deck Without Falling [DE 87], Plaintiff's Motion in Limine to Exclude Evidence [DE 88], Plaintiff's Motion to Strike Witness and/or to Require Defendant to Produce Witness for Deposition [DE 89], Defendant's Motion in Limine to Exclude Reference and/or Evidence of Prior and Subsequent Incidents [DE 90], Defendant's Motion in Limine to Exclude Reference and/or Evidence Regarding the International Safety Management Code [DE 91], and Defendant's Motion in Limine to Exclude Reference and/or Evidence Regarding Inapplicable Standards [DE 92]. Because the Court concludes that Defendant's Motion to Strike and Motion for Summary Judgment are dispositive of this action, the parties' other motions will be denied as moot.

**I.     Background**

On the afternoon of April 13, 2012, Plaintiff Teresita Sorrels ("Sorrels") boarded as a passenger on the *Norwegian Sky*, a cruise ship owned and operated by Defendant NCL (Bahamas) Ltd., d/b/a Norwegian Cruise Line ("Norwegian").  See DE 61 at 2, ¶¶ 1-2 (Def.'s Statement of Undisputed Facts); DE 66 at 5, ¶¶ 1-2 (Pls.' Resp. to Def.'s Statement of Facts).  It had rained before and after Sorrels boarded the ship that day.  See DE 61 at 2, ¶ 3; DE 66 at 5, ¶ 3.  After boarding, Sorrels walked on an outdoor pool deck made of teakwood.  See DE 61 at 2, ¶¶ 4-5, 7; DE 66 at 5-6, ¶¶ 4-5, 7.  She knew the deck was wet from rain but had no trouble walking on it.  See id.

In the early morning of April 14, 2012, Sorrels was listening to music in a shipboard lounge.  See DE 61 at 3, ¶ 11; DE 66 at 7, ¶ 11.  She left the lounge shortly after midnight to pick up her daughter at the teen center.  See id.  On her way there, Sorrels walked across the wooden pool deck.  See id.  After walking about 100 feet, she slipped and fell, landing in a sitting position and apparently hurting her right wrist.  See id.; DE 66-1 at 2 (security video).  Sorrels claims that she suffered a severe fracture to her wrist as a result of the fall.  See DE 66 at 7, ¶¶ 11-12.  Sorrels admits that when she fell, at least some of the deck may have been wet.  See DE 61 at 4, ¶ 12; DE 66 at 7, ¶ 12.  Further, a security video of the incident shows that most, if not all, of the deck was wet.  See DE 66-1 at 2.

On April 22, 2013, Sorrels and her husband Joseph (together, "Plaintiffs") filed this action against Norwegian.  See DE 1 (Compl.).  Plaintiffs allege that Sorrels's fall and resulting injuries were caused by Norwegian's negligence.  See id. at 2-4.  Plaintiffs' Complaint is based on general maritime law and pleads two claims for relief.

In Count I, Sorrels requests damages for physical, emotional, and economic injuries. See id. at 4.  In Count II, Joseph Sorrels seeks recovery for "loss of his wife's services, comfort, consortium, society and attentions."  Id. at 5.

On October 11, 2013, Norwegian filed its present Motion to Strike and Motion for Summary Judgment.  See DE 60; DE 61.  In the Motion to Strike, Norwegian asks the Court to exclude the proposed expert testimony of Dr. Ronald Zollo on several grounds. In its Motion for Summary Judgment, Norwegian asserts that Plaintiffs' claims fail because no substantial evidence shows that Norwegian acted negligently in connection with Sorrels's fall.  Both Motions are fully briefed and ripe for decision.

## II.    Discussion

### A.    Maritime Negligence Law

Because Sorrels's claimed injury occurred aboard a ship on navigable waters, federal admiralty law governs Plaintiffs' claims.  See Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628 (1959).  "In analyzing a maritime tort case," the Court applies "general principles of negligence law."  Chapparo v. Carnival Corp., 693 F.3d 1333, 1336 (11th Cir. 2012) (per curiam) (internal quotation marks omitted). A negligence claim requires proof that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm."  Id.  Except for its workers—to whom a higher standard of care applies—a shipowner owes to all persons properly aboard the ship "the duty of exercising reasonable care under the circumstances of each case."  Kermarec, 358 U.S. at 632 & n.9; see id. at 629-30; see also Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1334 (11th Cir. 1984) ("A carrier by sea . . . is not liable to passengers as an insurer,

3

but only for its negligence." (citing Kermarec, 358 U.S. at 632; Liverpool & G.W. Steam Co. v. Phenix Ins. Co., 129 U.S. 397, 440 (1889))).

When a passenger claims that she was injured by a dangerous condition on the ship, this standard of care normally "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir. 1989) (per curiam). In this case, however, Plaintiffs contend that Norwegian itself created a dangerous, slippery condition on the wooden pool deck by failing to properly maintain it. Plaintiffs therefore need not show that Norwegian had notice of this alleged condition. See Long v. Celebrity Cruises, Inc., __ F. Supp. 2d __, 2013 WL 6043918, at *3 (S.D. Fla. Aug. 1, 2013) ("Where a cruise ship operator created the unsafe or foreseeably hazardous condition, a plaintiff need not prove notice in order to show negligence." (collecting cases)). Instead, Plaintiffs must prove that Norwegian "created the allegedly dangerous condition sufficient to constitute a breach of its duty of reasonable care." Id. at *4.

### B.     Motion to Strike

#### 1.     Standards for Expert Testimony

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony. See Fed. R. Evid. 702.[2] In applying Rule 702 and the related Daubert

---

[2] Under Rule 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>   **(a)**  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

4

standards, "district courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant." Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993)). "District courts are charged with this gatekeeping function to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Id. (internal quotation marks omitted); see also United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) ("The importance of Daubert's gatekeeping requirement cannot be overstated."). To meet this obligation, courts "must engage in a rigorous inquiry" to decide whether

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable . . .; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Rink, 400 F.3d at 1291-92 (internal quotation marks omitted). "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." Id. at 1292.

In assessing the reliability of an expert's methods, courts may consider the following factors regarding the expert's theory or technique: (1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) whether it has a high known or potential rate of error and whether there are

---

> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

5

standards controlling its operation; and (4) whether it is generally accepted in the relevant field.  See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149-50 (1999) (citing Daubert, 509 U.S. at 592-94).  This "test of reliability is 'flexible,' and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case."  Id. at 141.  More, "[d]istrict courts have substantial discretion in deciding how to test an expert's reliability."  Rink, 400 F.3d at 1292 (internal quotation marks omitted).

While Daubert mandates an "exacting analysis of the proffered expert's methodology, it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence."  Quiet Tech. DC-8, Inc. v. Huerl-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003) (citation & internal quotation marks omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  Daubert, 509 U.S. at 596.  The Eleventh Circuit has noted that "'in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility.'"  Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1193 (11th Cir. 2011) (quoting Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1188 (9th Cir. 2002)).

Even if proposed expert testimony is admissible under Rule 702, that evidence may be excluded if it is irrelevant or if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403; see Fed. R. Evid. 401, 402; Allison v. McGhan Med. Corp., 184 F.3d 1300, 1309-10 (11th Cir. 1999).  In this context, Rule 403 is especially important:  "The Supreme Court recognized in Daubert the intricate role of Rule 403 in an expert testimony admissibility analysis when it noted that expert testimony could be 'both

6

powerful and quite misleading because of the difficulty in evaluating it.'" Allison, 184 F.3d at 1310 (quoting Daubert, 509 U.S. at 595). Since "expert testimony may be assigned talismanic significance in the eyes of lay jurors," a district court "must take care to weigh the value of such evidence against its potential to mislead or confuse." Frazier, 387 F.3d at 1263.

### 2. Testimony of Dr. Ronald Zollo

Norwegian's Motion to Strike seeks to exclude the testimony of Dr. Ronald Zollo, an engineer retained by Plaintiffs as an expert witness. See DE 68-1 at 2 (Pls.' Expert Witness Disclosure). On September 16, 2013—about seventeen months after Sorrels's fall aboard the *Norwegian Sky*—Zollo inspected the area of the teakwood deck where she fell. See DE 60-1 at 1-5 (Report of Ronald F. Zollo) ("Report"). Using a standard device for measuring "floor surface slip characteristics," Zollo tested the coefficient of friction ("COF")[3] of a dry part of the deck and several wet points near where Sorrels fell. Id. at 1-2.[4] According to Zollo's tests, the average COF for the dry area was 0.84, and the COF for the wet points ranged from a high of 0.70 to a low of 0.14. See id. at 3.

Although Zollo could not determine from the security video precisely where Sorrels fell, his Report concluded that "measurements taken over the general area of the fall showed great variation in slip resistance with many readings in the lowest range of the test results." DE 60-1 at 3. The Report stated that "[t]he average value of all wet testing measurements was 0.45 which is below the minimum standard values that have

---

[3] Coefficient of friction is "[t]he ratio of the force of friction between an object and a surface to the frictional force resisting the motion of the object." American Heritage Dictionary 357 (5th ed. 2011).

[4] As when Sorrels fell, it had been raining when Zollo inspected the ship's deck, so the exposed areas of the deck were wet. See DE 60-1 at 2.

7

long been accepted as required in order to classify a walkway surface as slip-resistant."

Id. Zollo's Report then described the sources of these COF standards:

> The references to a 0.5 minimum standard can be found in the literature of organizations such as ASTM, OSHA, the Federal Register, and the Hospital Research Bureau. In a letter response to an inquirer dated March 21 2003 the Director of Enforcement Programs at OSHA cites "A reasonable measure of slip resistance is static coefficient of friction (COF). "A COF of 0.5, which is based upon studies by the University of Michigan . . . is recommended as a guide to achieve proper slip resistance." It also states that higher coefficients may be necessary under certain conditions. The Standard Practice for Human Engineering Design for Marine Systems, Equipment and Facilities, ASTM F1166-07, states that walkways shall have a non skid surface sufficient to provide a coefficient of friction of 0.6 or higher measured when the surface is wet. Under either standard the [*Norwegian Sky's*] deck surface in its present condition does not qualify as suitably slip-resistant including in the area identified as where Ms. Sorrels slipped.

Id. (first alteration in original). Further, the Report explained how the claimed deficiencies in the deck's slip resistance created a dangerous condition for passengers:

> The subject conditions will trap individuals via a false sense of security based on the wide range of friction resistance along the walkway. Accordingly a passenger walking across the surface will be unaware of the presence of slippery areas as it is not open and obvious to individuals using normal attention especially if they are not clearly advised in advance. During the writer's inspection there were no posted signs warning of dangerously slippery conditions in the open wet deck areas . . . . The deposition testimony also did not indicate warning posted at the time of the fall incident to Ms. Sorrels. However, even with a warning given the fractional timing available to adjust their gate there would likely not be enough time to avoid the loss of walking stability.

Id. at 4.

Based on a review of Zollo's Report, credentials, and deposition testimony, the Court finds that he is qualified to testify competently regarding the slip resistances of

8

walkway surfaces, including the teakwood deck of the *Norwegian Sky*.  See Rink, 400 F.3d at 1291.  Though Norwegian contends that Zollo is not qualified to offer opinions about teakwood surfaces, the record indicates that he has sufficient "knowledge, skill, experience, training, or education" on that topic to testify as an expert.  Fed. R. Evid. 702; see DE 68-7 at 17 (Dep. of Ronald Zollo); see also Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.").  The Court is less certain that Zollo qualifies as an expert with respect to the other subjects addressed in his Report:  (1) individuals' mental and physical reactions to surfaces with varying slip resistances and (2) the necessity and adequacy of warnings concerning such surfaces.  Nevertheless, based on Zollo's deposition testimony that he has some expert knowledge and experience involving "human factors" and warnings, see DE 68-7 at 3-8, the Court will assume for purposes of decision that he is qualified to testify competently about those subjects as well.  But see Mitchell v. Royal Caribbean Cruises, Ltd., No. 12-cv-22734-UU, DE 96 at 10-12 (S.D. Fla. June 7, 2013) (holding, in cruise-ship slip-and-fall case, that Zollo was not qualified to offer expert opinions on warnings or human factors) (included at DE 60-2).

      For multiple reasons, however, the Court concludes that Zollo's testimony must be excluded because it is not based on reliable methods.  See Rink, 400 F.3d at 1292.  First, Zollo's central theory is that the *Norwegian Sky's* pool deck "trap[s] individuals via a false sense of security based on the wide range of friction resistance along the walkway."  DE 60-1 at 4.  "This is why," according to Plaintiffs, Sorrels "did not have any difficulty during the initial portion of her journey" walking across the deck.  DE 66 at 3; see id. at 4 & n.6.  But except for one "remote" area of the pool deck, DE 66-6 at 74, the only slip-resistance tests that Zollo performed on the deck were in the immediate

9

area of Sorrels's fall.  See DE 68-7 at 26 ("I did all the tests in the area where I thought she fell.").  Sorrels walked about 100 feet across the deck before she slipped and fell.  Yet Zollo tested no points along Sorrels's path to determine whether the slip resistances there were adequate or whether the COF readings at those points varied significantly from each other or from the area where Sorrels fell.  Thus, as Norwegian observes, "[t]here is no evidence of a constant slip resistance level on the 100-130 feet of wet deck Plaintiff walked on or that it varied from the spot of the slip and fall."  DE 78 at 2; cf. Carnival Corp. v. Stowers, 834 So. 2d 386, 387 (Fla. 3d DCA 2003) (per curiam) (holding that trial court erred in admitting Zollo's unreliable opinion that cruise-ship passenger's slip and fall on granite step was caused by liquid that adhered to her shoes after walking more than 100 feet across dry carpet; court stressed that Zollo "did not know the composition of the carpet, had not tested the water absorbing properties of the carpet and did not attempt to recreate the incident" but instead "based his opinion on the results of coefficient of friction tests he performed solely on the granite stairs").

Second, Zollo conducted his slip-resistance tests nearly a year and a half after Sorrels's accident.  But Plaintiffs have not shown that the same conditions existed on the deck at the time Sorrels fell.  See DE 60-1 at 3 (stating Zollo's opinion that the ship's "deck surface **in its present condition** does not qualify as suitably slip-resistant including in the area identified as where Ms. Sorrels slipped" (emphasis added)).  In this regard, Zollo testified that "it's not a question of construction.  It's how you maintain the deck.  There's nothing inherently wrong with teak." DE 68-7 at 56.[5]  Highlighting this

---

[5] Plaintiffs further emphasize this point in one of their pending motions:

> There has been no claim by the Plaintiff's expert [Zollo] in this case that teak is an inappropriate choice of materials for

10

problem is that Zollo's lowest COF test readings were obtained from a wooden plank (or possibly more than one plank; Zollo could not recall) that "felt a little on the slimy side." DE 68-7 at 34; see DE 60-3 at 13-14.  Zollo, however, did not know what the slimy substance was, and nothing shows that it was present when Sorrels slipped and fell. See DE 68-7 at 36.[6]

Third, Plaintiffs have not shown that the COF standards relied on by Zollo apply to the *Norwegian Sky*'s pool deck.  In his Report, Zollo cites several sources that he claims establish 0.5 or 0.6 as the minimum safe slip resistance on a walkway.  But a closer examination of these sources shows that they do not govern cruise-ship passenger decks.  The ASTM and OSHA materials cited by Zollo discuss general safety standards for **workers** aboard ships and do not address the appropriate standards for passenger areas on cruise ships.  See DE 68-3 at 4, ¶ 1.2 (ASTM Standard F1166-07) (explaining that listed standards apply to ship components that

---

> a deck "in general."  Likewise, the Plaintiff does not contend that NCL was negligent simply for choosing a teak deck for its vessel.  Instead, the claim in this case is that this particular teak deck was unsafe and unreasonably dangerous at the time of the Plaintiff's accident . . . .

DE 63 at 3 (Pls.' Suppl. Mot. to Strike and/or Exclude Def.'s Expert Bryan Emond).

[6] Plaintiffs' theory of liability distinguishes this case from Rosenfeld, in which the Eleventh Circuit reversed the exclusion of expert testimony that a cruise-ship operator's choice of ceramic-tile flooring for a buffet area "posed a higher danger of slip-and-fall accidents than other surface types."  654 F.3d at 1192-93.  Rejecting the district court's ruling that this testimony would not assist the jury, the court of appeals held that "[a] qualified expert who uses reliable testing methodology may testify as to the safety of a defendant's choice of flooring, determined by the surface's coefficient of friction."  Id. at 1194.  Here, even if Rosenfeld supported Plaintiffs' argument that Zollo's testimony would be helpful to the jury, that testimony is inadmissible because Zollo did not use "reliable testing methodology."  Id.  And while the Eleventh Circuit determined that the Rosenfeld expert's methods were sufficiently reliable "based on the facts of [that] case," id., this Court reaches a different conclusion upon review of the specific record here.

11

"crew members come in contact [with] in any manner for operation, habitability, and maintenance purposes"); id. at 5-6, ¶¶ 4.1, 4.2.1 (discussing relationship of standards to workers' performance of duties); DE 68-7 at 48 (indicating that 2003 OSHA letter concerned safety standards for workers); see also Saldana v. Kmart Corp., 260 F.3d 228, 233 (3d Cir. 2001) (affirming exclusion of expert testimony concerning retailer's alleged negligence in slip-and-fall case because testimony "attempt[ed] to force upon Kmart a strict liability standard based on [the expert's] reading of OSHA, a regulatory scheme far different from the applicable law").  When asked in deposition about the other sources mentioned in his Report—the Federal Register and the Hospital Research Bureau—Zollo could neither produce those sources nor explain specifically how they apply to this case.  See DE 68-7 at 47-48, 53-54.  And while Zollo insisted that the sources were controlling based on his "experience in engineering over many years," id. at 51, this assurance does not establish that Zollo's testimony is reliable.  See Fed. R. Evid. 702 advisory committee notes (2000 amends.):

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.  The trial court's gatekeeping function requires more than simply "taking the expert's word for it."

See also Frazier, 387 F.3d at 1261.  In short, nothing in the record demonstrates that the COF standards underpinning Zollo's testimony pertain to Norwegian's ships.[7]

---

[7] Plaintiffs have also submitted a document indicating that Carnival Cruise Lines uses a minimum COF standard of 0.6 for passenger walkways on its newly constructed cruise ships.  See DE 68-3 at 2.  The document makes clear, however, that it "does not override any existing marine architectural standard concerning the subject."  Id.  Nor does Carnival's use of a 0.6 COF standard for its newly built ships establish an advisory guideline or industry custom applicable to Norwegian's ships.  See Whelan v. Royal Caribbean Cruises Ltd., No. 1:12-cv-22481-UU, 2013 WL 5595938, at *3-*4 (S.D. Fla. Aug. 12, 2013).

12

For all these reasons, Plaintiffs have not established that "the methodology by which [Zollo] reache[d] his conclusions is sufficiently reliable." Rink, 400 F.3d at 1292. The fundamental problems with Zollo's methods do not simply affect the weight or persuasiveness of his testimony but instead show that his basic theories, techniques, and conclusions are unreliable.[8] Accordingly, Zollo's proposed testimony concerning the alleged dangerous condition of the *Norwegian Sky*'s pool deck must be excluded. The Court will therefore grant Norwegian's Motion to Strike.

### C.  Motion for Summary Judgment

#### 1.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To satisfy

---

[8] This lack of reliability also leads the Court to question whether Zollo's testimony would help the jury understand the evidence or issues that he purports to address.  See Rink, 400 F.3d at 1292.  Even if Zollo's testimony has some probative value, though, its relevance is substantially outweighed by the risk of "unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Civ. P. 403.  For example, if Zollo were allowed to testify that the 0.5 or 0.6 COF figures established Norwegian's duty of reasonable care, the jury would likely give significant weight to that evidence despite its minimal relevance.  See Frazier, 387 F.3d at 1263; Allison, 184 F.3d at 1310; see also Whelan v. Royal Caribbean Cruises Ltd., No. 1:12-cv-22481-UU, 2013 WL 5595938, at *4 (S.D. Fla. Aug. 12, 2013) (finding that safety guidelines inapplicable to cruise-ship operator's alleged negligence were irrelevant and that "each one carries with it a risk of confusing or misleading the jury"), recons. denied, 2013 WL 5596119, at *1 (S.D. Fla. Aug. 13, 2013) (explaining that use of guidelines at trial would "likely suggest to the jury incorrectly that they articulate standards of care to which Defendant should have adhered").

13

this burden, the movant must point out to the Court that "there is an absence of evidence to support the nonmoving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). The non-moving party therefore "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker, 911 F.2d at 1577. If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

The Court's function at the summary-judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In making this determination, the Court must discern

14

which issues are material:  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248. In deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  See Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

### 2. Analysis of Defendant's Motion

Norwegian contends that the record fails to establish a triable issue of fact about whether a dangerous condition existed on the *Norwegian Sky*'s pool deck at the time of Sorrels's accident.  Aside from Zollo's excluded testimony, Plaintiffs rely on two pieces of evidence to show that Norwegian created a dangerous condition on the deck by failing to properly maintain it.  First, Plaintiffs claim that numerous "substantially similar" accidents occurred aboard the ship.  Second, Plaintiffs assert that a ship employee's testimony proves that Norwegian recognized the alleged hazardous condition.

With respect to the alleged "substantially similar" accidents, the Eleventh Circuit has explained,

> The doctrine of substantial similarity applies when one party seeks to admit prior accidents or occurrences involving the opposing party, in order to show, for example notice, magnitude of the danger involved, the party's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation. In order to limit the substantial prejudice that might inure to a party should these past occurrences or accidents be admitted into evidence, courts have developed limitations governing the admissibility of such evidence, including the "substantial similarity doctrine."  This doctrine applies to protect parties against the admission of unfairly prejudicial evidence, evidence which, because it is not substantially similar to the accident or incident at issue, is apt to confuse or mislead the jury.

Tran v. Toyota Motor Corp., 420 F.3d 1310, 1316 (11th Cir. 2005) (alteration & internal quotation marks omitted).  In particular, the substantial similarity doctrine "requires that before evidence of prior accidents or occurrences is admitted into evidence, the proponent of such evidence must show that conditions substantially similar to the occurrence caused the prior accidents."  Heath v. Suzuki Motor Corp., 126 F.3d 1391, 1396 n.12 (11th Cir. 1997) (internal quotation marks omitted).  Also, admitting evidence of substantially similar incidents is "subject to the reasonable discretion of the trial court as to whether the prejudice or confusion of issues which may probably result from such admission is disproportionate to the value of the evidence."  Id. at 1396 n.13 (alteration & internal quotation marks omitted).

Here, in response to a discovery interrogatory, Norwegian disclosed thirty-one other slip-and-fall accidents that occurred on teakwood flooring in public areas of the *Norwegian Sky* over a four-year period.  See DE 66-3 at 4-19 (Answer to Interrog. No. 1); see also DE 33 at 2 (Order Granting Pls.' Mot. to Compel Disc.).  Norwegian's response provided basic details of each incident, including the passenger's description of the event; where the accident occurred; whether any liquid was on the deck and, if so, what kind; the type of footwear worn by the passenger; and a crewmember's observations about the incident.  See DE 66-3 at 4-19.  Plaintiffs contend that twenty-two of these accidents were caused by conditions substantially similar to Sorrels's fall.  The Court disagrees.

The incidents cited by Plaintiffs occurred at a variety of locations on the *Norwegian Sky*'s pool deck, including near the pool and the jacuzzi.  It is unclear where several of the accidents happened, and none of them occurred where Sorrels fell.  These facts are especially significant in light of Plaintiffs' theory that the slip resistances

16

of the deck's teakwood planks varied widely.  The liquids that the other passengers claimed to have slipped on likewise differed.  Most of the prior accidents involved unknown wet substances, two involved floors wet from cleaning, and one involved spilled ice cream.  Many of the incident reports note that there was no indication of rainwater, the liquid that allegedly caused Sorrels's fall.  Indeed, only three of the twenty-two passengers reported slipping on rainwater.  One of those passengers was wearing worn sandals, another high heels.  The accident reports also list other factors irrelevant to Sorrels's fall:  three passengers slipped and fell while playing table tennis and one (a twelve-year-old) fell while chasing someone around the pool.

Given the many factual differences between the prior accidents and Sorrels's, Plaintiffs have not shown that "conditions substantially similar to" Sorrels's fall also "caused the prior accidents." Heath, 126 F.3d at 1396 n.12.  Even assuming *arguendo* that the conditions that caused some of the earlier incidents were generally similar to Sorrels's fall, the limited information about those incidents greatly restricts their probative value.  By contrast, presenting the generalized accident descriptions to the jury would risk prejudice and confusion "disproportionate to the value of the evidence." Id. at 1396 n.13.[9]

Plaintiffs also rely on the testimony of Solange Winifred, who worked at a restaurant on the *Norwegian Sky*.  See DE 66-6 at 102 (Dep. of Solange Winifred).  Her

---

[9] Zollo purported to testify in his deposition that the prior accidents cited by Plaintiffs were substantially similar to Sorrels's fall.  See DE 66-6 at 17-18.  "Substantial similarity," however, is a legal doctrine for the Court to consider and is not a proper subject of expert testimony.  In any event, Zollo acknowledged that the basis of his testimony was limited to the information provided in Norwegian's interrogatory answer. See DE 60-3 at 8.  Thus, even if Zollo's testimony on this issue were appropriate, it offers no additional evidence regarding the facts of the previous incidents.

17

testimony, however, fails to show that a dangerous condition existed on the pool deck. Winifred stated that she would post a warning sign when something was spilled on the restaurant floor.  See DE 66-6 at 104-06.  And though Winifred further testified that the deck department would post signs warning that the decks could be slippery when wet, she admitted that she did not actually know whether those signs were posted because she worked in the restaurant.  See DE 78-1 at 5-6.

In sum, Plaintiffs have produced no substantial evidence that Norwegian created a dangerous condition on its ship and thereby breached its duty of reasonable care. See Kermarec, 358 U.S. at 632; Long, 2013 WL 6043918, at *4.  The Court thus concludes that Norwegian's Motion for Summary Judgment should be granted.

### III.   Conclusion

For the reasons discussed, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Strike Plaintiff's Expert, Ronald Zollo [DE 60] is **GRANTED**;

2. Defendant's Motion for Summary Judgment [DE 61] is **GRANTED**;

3. The following motions are **DENIED AS MOOT**:  Defendant's Motion to Dismiss Count II of Plaintiffs' Complaint [DE 11], Plaintiffs' Motion and Supplemental Motion to Strike and/or Exclude Defendant's Expert Bryan Emond [DE 57; DE 63], Plaintiffs' Motion and Supplemental Motion to Strike and/or Exclude Defendant's Expert Catherine Borowski [DE 58; DE 62], Defendant's Motion to Strike Plaintiffs' Late Disclosed Experts and/or Who Have Failed to Comply with Rule 26 [DE 59], Plaintiffs' Motion to File a Brief Sur-Reply in Opposition to Defendant's Reply in Support of Its Motion to Strike Plaintiffs' Late Disclosed Experts and to Supplement the Record [DE 82], Plaintiff's Motion in Limine to

Exclude Evidence or Argument of Collateral Sources [DE 86], Plaintiff's Motion in Limine to Preclude Evidence or Argument Regarding the Number of Passengers Who Walked Upon the Subject Teak Deck Without Falling [DE 87], Plaintiff's Motion in Limine to Exclude Evidence [DE 88], Plaintiff's Motion to Strike Witness and/or to Require Defendant to Produce Witness for Deposition [DE 89], Defendant's Motion in Limine to Exclude Reference and/or Evidence of Prior and Subsequent Incidents [DE 90], Defendant's Motion in Limine to Exclude Reference and/or Evidence Regarding the International Safety Management Code [DE 91], and Defendant's Motion in Limine to Exclude Reference and/or Evidence Regarding Inapplicable Standards [DE 92]; and

4. The Court will enter a separate Final Judgment consistent with this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 4th day of December, 2013.

*James I. Cohn*
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF