UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 13-CV-21413-COHN/SELTZER

TERESITA SORRELS and JOSEPH
SORRELS (her husband),

      Plaintiffs,

v.

NCL (BAHAMAS) LTD., a Bermuda Company
d/b/a NORWEGIAN CRUISE LINE

      Defendant.

_____/

### DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT FOLLOWING ELEVENTH CIRCUIT'S REMAND

## I.     Preliminary Statement

Plaintiff Teresita Sorrels was a passenger aboard the cruise ship *Norwegian Sky*. Sorrels claims that around midnight she slipped and fell on rainwater (a natural occurrence) while walking on an outdoor pool deck. Although she knew it had been raining throughout the afternoon and evening hours, Sorrels alleges that Norwegian was negligent because it failed to warn her of the open and obvious condition that the outdoor deck was wet from rainwater—and therefore slippery.

Norwegian previously filed its Motion for Summary Judgment [D.E. 61], which was fully briefed and granted [D.E. 93] based on the exclusion of certain expert evidence. On appeal, the Eleventh Circuit remanded the case for further consideration with its ruling on the exclusion of evidence. Following the appeal, Norwegian submits summary judgment is warranted as (1) there was no dangerous condition in the first instance; (2) Norwegian did not have notice of any alleged dangerous condition; and (3) it did not have a duty to warn of the open and obvious condition of an outdoor deck being slick or slippery from rainwater.

As is typical in a personal injury case, Plaintiffs' Complaint [D.E. 1], seeks to hold Norwegian liable for a host of purported duties and alleged breaches thereof—many of which are unsupported by the law and/or any record evidence. During briefing on Norwegian's Motion for

Summary Judgment[1] [D.E. 61], and the appeal, Plaintiff specifically identified the theories upon which she was seeking to hold Norwegian liable, to wit:  (1) Norwegian failed to warn plaintiff that portions of the deck were slippery when wet [D.E. 66, p. 18]; (2) Norwegian created a dangerous condition on the deck by failing to properly maintain it; and (3) Norwegian failed to remedy the insufficiently slip resistant deck.  *See* Initial Appellate Brief, p. 15, attached as Exhibit "A".  Norwegian's Motion addresses liability predicated on these theories.

## II.     Statement of Undisputed Facts

1.      On April 13-14, 2012, Sorrels was a passenger on Norwegian's cruise vessel the *Norwegian Sky*.  (D.E. 1, Compl.).

2.      Sorrels boarded *Norwegian Sky* at approximately 5:00 p.m., Friday, April 13, 2012. (Ex. "B," Teresita Sorrels' Dep. at 49:23-50:5).

3.      It was raining when Sorrels boarded the *Norwegian Sky*, and she was aware that it continued to rain on and off throughout the day.  (*Id*. at 50:10-18 and 86:13-87:15).

4.      Sorrels acknowledged that at the time she went to dinner earlier in the evening, the vessel's outer decks "would probably be wet" and she "would assume the deck was wet" since it had been raining. (*Id*. at 88:5-9; 20-24).

5.      After boarding the *Norwegian Sky*, Sorrels went to Deck 11 (an outdoor pool deck). Sorrels observed that the wooden deck was wet from the rain but observed no rainwater puddles. (*Id*. at 85:2-5, 87:20-88:8, 88:20-24, 89:9-12, 93:6-15, 97:1-11 and 109:7-25).

6.      At that time, Sorrels was with her travel companion, Marta Arbulu, who also observed the deck's wet condition.  (Ex. "C," Dep. of Marta Arbulu at 24:10-20 and 25:19-20).

7.      Prior to her incident, Sorrels had no difficulty walking on the wet teak deck and did not slip and fall.  (Ex "B," Teresita Sorrels' Dep. at 98:1-18).

8.      Similarly, Arbulu acknowledged she did not fall or have any difficulty walking on the wooden deck—she did not find any problem with the flooring.  (Ex. "C," Dep. of Arbulu at 29:10-30:4).  Nor did she observe any other crewmember or passenger having any type of fall or accident on the wooden deck.  (*Id*. at 29:23-30:1).

9.      Sorrels' daughter, Katrynna Sorrels, was also on the outdoor pool deck with her mother and Arbulu earlier on the date of the incident.  She noted that it was raining at that time and

---

[1]  Norwegian incorporates and adopts the arguments set forth in its first Motion for Summary Judgment (D.E. 61) still before this Court on remand.

CASE NO.: 13-CV-21413-COHN/SELTZER

does not recall having an accident while on the pool deck. (Ex. "D," Dep. of Katrynna Sorrels at 4:24-5:4, 7:24-8:3, and 8:7-9).

10.     Sorrels understood that a wet floor tends to be more slippery than a dry floor.  (Ex. "B," Teresita Sorrels' Dep. at 295:10-17).  This sentiment was echoed by her daughter, Katrynna Sorrels, who testified:

> Q. … Has anyone ever told you that you should be careful walking on a floor
>       that's wet?
> A. I don't recall. It's kind of obvious.
> Q. Okay. And when you say it's obvious, you know that?
> A. I guess you can say common sense.

(Ex. "D," Dep. of Katrynna Sorrels at 24:24-25:10).

11.     In the early morning hours of Saturday, April 14, 2012, Sorrels was listening to music in a lounge aboard ship.  (Ex. B at 71:8-72:10 and 290:11-22). At around 12:30 a.m., she left the lounge and proceeded to the Teen Center to pick up her daughter. (*Id*. at 127:20 – 129:22).  En route to the Teen Center she passed through double doors and stepped out onto an open air wooden deck located on Deck 11 of the ship.  (*Id*., 145:20-146:8, and 146:14-16).

12.     After proceeding through the double doors Sorrels walked approximately 100 feet from the port to the starboard side of the vessel and claims she slipped and fell (*Id*.)

13.     Before she fell, Sorrels had not seen any puddles of water; the only puddle she was aware of was the one at the spot of her fall.  (*Id*. at 141:10-11, 142:7-11, and 163:4-18). Sorrels stated that she did not see the puddle prior to her slip.  (*Id*. at 176:12-17, 178:12-15 and 178:23-179:1).  Sorrels acknowledged that given the fact it was raining that day, the area could have been wet from rainwater.  (*Id*. at 291:13 – 14).

14.     Specifically, Sorrels described the condition of the outdoor deck as follows:

> Some of the area could have been wet.  Some could have dried out.  I, you know, exactly, I couldn't remember.  I wouldn't remember.  *But considering that it was raining and, you know, that day, it would be logical to say that some of the areas were wet*. (*Id*. at 147:14 – 18 (emphasis added))
>                                         ***
> I can say that some of the areas may, may have looked wet. (*Id*. at 148:4-5)
>                                         ***
> I'm not saying that part of it, or not; I'm saying that I recollect that some of the deck was wet and I think -- you know, considering that it was raining that day, some of the deck would be wet and it would be safe to walk on that wet deck.

(*Id.* at 149:1 – 5).

15.     Additionally, Sorrels did not have any trouble seeing the condition of the outdoor flooring. (*Id.* at 162:5 – 8).  From the moment she proceeded through the double doors to the time she alleges she fell, Sorrels had an unobstructed view of the decking. (*Id.* at 179:7-12).

16.     There is no evidence that the alleged water on the outdoor deck was anything other than "plain" rainwater, containing no soap or other slippery ingredient. There is no evidence that it was anything other than rainwater.

17.     Furthermore, the outdoor wooden deck at issue is not shown to have been unusual in any way.  In no sense is this a case of a hidden defect or a trap that would remain undetected by a person in the normal use of her faculties.

18.     CCTV footage captured the incident.  (*See* DE 73-2, Video).  The CCTV footage shows 10 people walking on the wet deck in the vicinity of the location of the incident, without any difficulty.

19.     Norwegian produced the CCTV footage of the  incident after Sorrels' deposition.

20.     Plaintiff's sworn answers to interrogatories state that she "fell in a wet spot" in response to a question as to what she claimed to be the reason(s) why the alleged accident occurred. *See* Answers to Interrogatories, No. 3. Ex. "E".

21.     At her deposition, Sorrels testified that she fell in a puddle of water, which she did not see prior to her slip and fall.  Her testimony was as follows:

Q.      … So as you're walking out through those double doors onto the outer deck *** what did you see?

A.       I walked like I normally walk.  And next thing I know, I slipped and fell. And I went back, kind of side--you know, kind of, kind of went back, and I put my right hand, realized that, once I actually hit the floor, realized I was in a puddle.  I was in a ... and my hand was completely deformed.

        ***

Q.         You said that you were in a puddle?

A.      Yeah.  The minute I slipped and fell, and I touched the ground and my right hand went on, I realized that there was a puddle of water.  There was an accumulation of water.

Q.      Did you say --

A.      A pud--

Q.      -- a little puddle?

A.      There was an accumulation of water.

Q.      Okay.

A.      A puddle.

CASE NO.: 13-CV-21413-COHN/SELTZER

(Ex. "B" at 128:25- 129:22).

Q.    And now, what is it that you call a puddle or, you use the term accumulation
      of water?  What do you mean by that phrase?
A.     Once I slipped and I landed, when my hand landed, it was more than just a, I
      don't know, drop.  I mean, it was, it was, it was um -- there was a lot of
      water-- there was water.  I'm not -- I -- there was just -- I don't know how to
      explain that there was  (indicating) ...
Q.    All right.
A.    ... accumulation of water.
Q.     Okay.  So that's why I want to be clear and make sure I understand what you
      meant when you used the term accumulation of water.
A.    Puddle.  Like a (indicating).
Q.     Okay.  When you used the term accumulation of water, are you referring to
      that it was more than just damp to the touch?  Is that what you're indicating?
A.    A lot more than just damp.
Q.    Okay.  Such that when you say there was an accumulation of water, would it
      be that if you put your hand on it, it would splash?
A.    It felt that way, may-- yes.

(*Id.* at 138:11- 139:8).

Q.    Sure.  Other than to, to become aware that there was a puddle on the floor, at
      the time that your were on the floor, the only thing you did was put your hand
      on it and use your vision?
A.    Well, when I slipped and fell, I landed on the puddle.
Q.    Okay.
A.    So that's when I saw that there was water.  And  there was puddle.  There
      was something more than -- and my hand, it was –

(*Id.* at 140:9-18).

Q.    Okay.  Okay, so as we sit here today, the only puddle that you're aware of is
      the one that was right at the spot that you fell.
      A.   Yes.  Because I fell, I knew that I felt the puddle.

(*Id.* at 142:7-11).

Q.    Okay.  My question is, is not -- as we sit here today, do you have any specific
      recollection of seeing **the exact spot of your fall** before the incident?
A.    I do not have a specific recollection that I  saw --
Q.    Okay.
A.    -- a puddle before I fell.
Q.    Okay.  That's not my question.  Was it?  Did I yet -- was the word puddle in -
A.    **Well, that's where I fell.**

(*Id.* at 175:15-24 (emphasis added)).

22.     Furthermore, during cross-examination by Plaintiff's counsel, Sorrels testified that she was not able to see the puddle *that she fell in*.  (*Id.* at 301:25-302:2).

23.     Norwegian did not have any notice of the alleged rainwater puddle described by Sorrels:

> Q.     Okay.  The puddle that you described to us where your accident -- where you -- at the spot where your accident occurred, as you sit here today, are you aware of anyone at Norwegian Cruise Line who knew that that puddle existed?
> A.     *No.*
> Q.     Okay. At any point in time has anyone from Norwegian Cruise Line told you that they were aware that there was a puddle at the area where you fell?
> A.     *No.*  That I can remember.

(*Id.* at 266:12 – 22 (emphasis added))

***

> Q.     The puddle that you observed when you were on the floor after the accident, do you know how long that puddle was there for?
> A.     *No.*

(*Id.* at 280:22-25 (emphasis added))

24.      Sorrels did not see anyone else slip on the deck where her accident occurred.  (*Id.* at 292:15-17).

25.     Plaintiff's disclosed expert, Ronald Zollo, testified that there is nothing inherently wrong with a teak deck.  *See* (Ex. "F", Dep. of Ronald Zollo, at 332:17 – 333:4).

26.     Zollo further testified that he did not know when the deck of the *Norwegian Sky* was put in place or specifically how it was maintained.  (*Id.*)

27.     Zollo testified that he did not have any opinion on the products to be used to clean a deck or a manufacturer's recommendations for products to use on teak.  (*Id.* at 66:10-68:10.

28.     The teak deck was regularly maintained and a deep cleaning was performed daily to a particular section of the deck on a weekly rotation, with chemicals specifically formulated for teak.  *See* Norwegian's Answers to Plaintiff's Interrogatories, attached as Exhibit "G".  There is no evidence whatsoever that this maintenance falls below any standard of care.

29.     The record is devoid of any evidence that Norwegian's maintenance of the subject deck or training of its crew was deficient in any way.

30.     Zollo used an English XL Tribometer to measure the slip resistance of the subject deck.  (Ex. "F", Ron Zollo's Dep. at 95:1-15).  Zollo did not use any other machine to test the deck such as a BOT or Horizontal Dynamometer.

31.     Zollo did not conduct tests using the English XL Tribometer that provide a wet coefficient of friction value.  Declaration of David Wills, ¶6, Exhibit "J".

32.      An English XL Tribometer does not determine the wet coefficient of friction ("COF") of a surface.  Rather, it determines the "slip index" or "slip resistance" of a wet surface and the COF of a dry surface.  (Ex. "H", Depo. of Defense Expert, David Wills, at 23:20-24:12; & Ex. "F", Zollo's Dep. at 168:17-169:8).

33.     The two devices that can be used to determine a wet coefficient of friction are the BOT and the horizontal dynamometer.  (Ex. "H", Wills' Dep. at 38:14 – 39:25).  These devices operate different than the English XL.  (*Id.* at 38:5-9).

34.     The record is devoid of any prior substantially similar slip and fall incidents.

35.     Construction on the *Norwegian Sky* was finished in 1999[2], over *seven* years before the ASTM F-1166-07 wet COF was first promulgated in 2007.  *See* ASTM, attached as Ex. "I"; Declaration of David Wills, ¶7, Exhibit "J".

36.     The Carnival Cruise Lines' Company Safety Standards were first issued in 2008 and expressly note that it only applies to "Newbuilds."  *See* Carnival Company Safety Standards, (DE 68-3, p.2-3).

37.     Both ASTM F1166-07 and the Carnival Standards set forth values for a wet COF. *See (*Ex. "I" & (DE 68-3)).  Neither set forth a minimum value for a dry COF or for a wet "slip resistance" or wet "slip index."

38.     The record is devoid of any evidence of the existence of a consensus standard recommending a specific value for dry COF, wet COF, "slip resistance", or "slip index" at the time of the construction of the *Norwegian Sky*.

39.     There is no evidence that Norwegian was aware of a varying slip resistance of the deck prior to Sorrels alleged incident.

---

[2]  *See Norwegian Sky*, https://www.ncl.com/cruise-ship/sky (last visited Feb. 1, 2016).

### III.    Memorandum of Law

**A.    Legal standard**[3]

The summary judgment standard, of course, is well known: whether there exists a genuine issue of material fact on the record as it now stands.  And there is no genuine issue of fact here on these points. *See* Fed. R. Civ. P. 56(c).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**B.    The Court should grant Norwegian summary judgment in its favor because it is not liable for open and obvious conditions and has no duty to warn of the same.**

The standard of care owed to passengers by a cruise ship owner is reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959); *Everett v. Carnival Cruise Lines, Inc.*, 912 1355, 1358 (11th Cir. 1990); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989).  A cruise ship operator is not an insurer of passenger safety; it does not become liable merely because an accident occurs.  *Monteleone v. Bahama Cruise Line*, Inc., 838 F.2d 63, 65 (2d Cir. 1988); *Kornberg*, 741 F.2d at 1334.  A shipowner must give notice of dangers which are not apparent and obvious.  *Luby v. Carnival Cruises, Inc.*, 633 F. Supp. 40 (S.D. Fla. 1986); *Gemp v. U.S.*, 684 F.2d 404 (6th Cir. 1982) (maritime law recognizes that a shipowner has no duty to warn of an open and obvious condition).

The Eleventh Circuit correctly acknowledged that Sorrels slipped and fell on rainwater on a rainy day. *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015). However, the Eleventh Circuit did not address, nor preclude, the argument that Sorrels seeks to hold Norwegian liable for what she alleges was an outdoor pool deck slippery from rainwater, which she knew about and which was an open and obvious condition.  As such, this argument is properly before this Court to consider as grounds for summary judgment.[4]

Courts throughout the country, in granting summary judgment motions like the present, have determined that rainwater making a surface slick or slippery is an open and obvious condition for which there is no duty to warn.  For example:

---

[3]      This action is governed by the general maritime law of the United States; however, state law may be used to supplement the general maritime law as long as it does not alter or overrule maritime law. *Everett v. Carnival Cruise Lines, Inc.*, 912 F.2d 1355, 1358 (11th Cir. 1990); *Norwegian Cruise Lines, Ltd. v. Zareno*, 712 So. 2d 791, 793 (Fla. 3d DCA 1998).

[4]  Although Norwegian presented this argument in its original Motion for Summary Judgment [D.E. 61], this Court granted summary judgment on other grounds and did not address that the alleged danger was open and obvious. Therefore, it is proper for consideration.

In *Coto v. Hyannis Air Serv., Inc.*, No. 2005-191, 2008 WL 5632264 (D. V.I. Jan. 31, 2008) , the plaintiff was an airline passenger who fell while disembarking from an aircraft during a rain storm. The plaintiff brought suit against the airline alleging it failed to warn her of the steps' slippery and dangerous condition. *Id*. at *1. The court granted the defendant's motion for summary judgment and found that the plaintiff knew it was raining and that the stairs were wet. *Id*. at *5. "Defendant's failure to warn Plaintiff of the obviously wet and slippery conditions, without more, is insufficient to establish that Defendant was negligent. *Wet stairs, as a result of rainy weather, cannot be considered a condition that requires warning*." *Id*. (emphasis added)

In *Laughlin v. Auto Zone Stores, Inc.*, No. 08 MA 10, 2008 WL 4379569 (Ohio Ct. App. Sept. 22, 2008), the plaintiff slipped and fell entering a store on a rainy day and sought to hold the store liable for negligence. *Id*. at *1. In granting the defendant's motion for summary judgment, the court found that inclement weather creates an open and obvious hazard which shields owners and occupiers from liability resulting from wet weather. *Id*. at *3. The court concluded that plaintiff failed to demonstrate that the defendant created an unreasonably dangerous condition or that his accident was caused by a latent or concealed defect in the floor—a wet floor caused by rainwater is an open and obvious condition for which there is no duty to warn. *Id*. at *5; *see also Mounts v. Ravotti*, No. 07 MA 182, 2008 WL 4415819 (Ohio Ct. App. Sept. 26, 2008) (water on the steps leading to and from tenant's unit and the lack of a gutter on the building that contributed to the flooding of the steps was open and obvious to tenant such that, under open and obvious doctrine, tenant could not assert actionable claim of general negligence against landlord).

In *Hackworth v. U.S.*, 366 F. Supp. 2d 326 (D. S.C. 2005) , the plaintiff brought suit after she slipped and fell at a convenience store on rainwater which she alleged was present at the entrance to the store. *Id*. at 328. Again, the court granted defendant's motion for summary and held that even if there was a puddle on the floor of store just inside the entrance on a rainy day and the defendant had constructive notice of puddle, the defendant did not have a duty to warn the plaintiff of the open and obvious condition. *Id*. at 330 – 331. The plaintiff testified she purposely looked down as she entered the store in an attempt to be careful given the large amount of rain that had fallen. *Id.*

In *Kelly v. United States Dept. of Agriculture*, No. 05 CV 687, 2006 WL 2692714 (E.D. Ky. Sept. 13, 2006), the plaintiff slipped and fell while proceeding down a wooden step which led to a boat ramp. *Id*. at *1. Like Sorells, plaintiff claimed it had rained hard the night before his fall and

that everything was wet.  *Id.*  The court concluded that summary judgment was proper in favor of defendant because of the open and obvious nature of rainwater.  *Id.* at *3.  The court reasoned that plaintiff knew or should have known the steps were slippery due to rainfall.  *Id.*  "The undisputed facts in the record lead to no other conclusion than that the condition which caused Plaintiff's fall was open and obvious.  In short, a possessor of business premises is not liable for injuries suffered by another person due to an open and obvious condition on the premises."  *Id.* at *4.

In *Emory University v. Smith*, 581 S.E.2d 405 (Ga. Ct. App. 2003),  The plaintiff slipped and fell on an outside "slippery and wet" wheelchair ramp while walking into a hospital on a rainy day.  *Id.*  The plaintiff admitted she knew before she stepped onto the ramp that it was sloped and there would be water on it from rain.  *Id.*  The court granted defendant's motion for summary judgment and held that "a slippery condition caused solely by rainwater is not a hazard because it presents no unreasonable risk of harm."  *Id.* at 406.

Indeed, more recently in this district two Courts have granted summary judgment in favor of cruise lines in cases with strikingly similar facts.  For example, in *Frasca v. NCL (Bahamas) Ltd.*, No. 12-20662-CIV, 2014 WL 1385806 (S.D. Fla. April 9, 2014), the plaintiff slipped and fell on water that had accumulated on the cruise ship's outer deck from rain or mist.  The Court held that Norwegian was entitled to summary judgment as "a slick deck caused by water from rain or mist is an open and obvious condition."  *Id.* at *6.  The Court explained:

> In this case, the rainy/misty condition itself serves as an adequate warning that the deck would be wet and slick because it is obvious to a reasonable person. Indeed, federal courts routinely dismiss cases or grant summary judgment for defendants in similar cases involving accumulated rainwater which made a surface slippery. *See, e.g., Id.; Gunter v. United States,* 10 F.Supp.2d 534 (M.D.N.C.1998) (granting summary judgment and holding that rainwater that accumulated on floor was open and obvious hazard); *Faircloth v. United States,* 837 F.Supp. 123 (E.D.N.C.1993) ("Everybody knows that the hallways ... during a continued rainstorm are tracked all over by the wet feet of people coming from the wet sidewalks, and are thereby rendered more slippery than they otherwise would be.").

*Id.* at *7 (citations omitted).

Similarly, in *Luther v. Carnival Corp.*, 99 F.Supp.3d 1368 (S. D. Fla. 2015) (Williams, J.), the Court granted summary judgment in favor of the defendant cruise line where the plaintiff "slipped and fell on the deck of the ship following a period of rainy weather." *Id.* at 1369.  The Court held that the cruise line had no duty to warn the plaintiff because the plaintiff was aware of

an open and obvious danger "to wit: an outside deck that was wet from rain and therefore could be slippery." *Id.* at *7. As the Court duly noted: "*[t]he 'mere fact that one slips and falls on a floor does not constitute evidence of negligence, nor does the the fact that a floor was slick made the owner liable.'*" *Id.*at *1370-71 (citing *Wish*, 2008 WL 517149 at *3) (emphasis added).

As in *Frasca* and *Luther*, here Sorrels' own testimony shows she was aware of the water and she appreciated the condition. As the above cases illustrate, there is no duty to warn of rainwater on an open air deck that is exposed to the elements. It is clear from the record that Sorrels knew of rainwater on the deck, which was plainly visible, and voluntarily walked on the deck. (*See* DE 73-2, Video).

Because the wet exterior deck was an open and obvious danger and Sorrels knew of the danger, Norwegian had no duty to warn. The general maritime law supports this analysis and conclusion. In *Luby*, 633 F. Supp. 40, a passenger aboard the defendant's cruise ship brought suit alleging she suffered injury when she tripped over a shower ledge. The shower curtain was drawn so that the ledge around the shower was unexposed. There was no lack of visibility and the bathroom floor was clean and dry. The plaintiff argued that the defendant breached its duty by concealing the ledge and by failing to warn her of its existence. In granting summary judgment, the *Luby* court held:

> It is clear then that the presence of the ledge behind the shower curtain was, or should have been obvious to [plaintiff] by the ordinary use of her senses…(citations omitted), and defendant is entitled to expect, as a matter of law, that [plaintiff] would perceive that which would be obvious to her upon the ordinary use of her senses. Accordingly, this Court concludes that the defendant did not breach its duty of care to [plaintiff] as a matter of law.

*Id.* at 42. *see also Frasca,* 2014 WL 1385806, at *6 (S.D. Fla. Apr. 9, 2014). In other words, the court applied the rationale that some conditions are so open and obvious that they can be held as a matter of law not to constitute a hidden dangerous condition. A ship owner is entitled to assume that a passenger will perceive that which would be obvious to her upon the ordinary use of her own senses, and is not required to provide notice or warning of an obvious condition, *i.e.*, rainwater in the present case. *Id.* Certainly rainwater on an outdoor deck does not constitute a hidden dangerous condition. *See, e.g., Hackworth,* 366 F. Supp. 2d 326; *Luther,* 99 F.Supp.3d 1368.

To the extent Plaintiff argues that she did not need to be warned of rainwater or puddles on the deck, but rather needed to be warned that the deck was slippery due to the water (D.E. 66, p. 18),

this argument is a distinction without a difference.  Any surface when wet is also, as a matter of common knowledge, slippery.  Indeed, courts have recognized that a rainy condition "itself serves as an adequate warning that the deck would be wet *and slick* because it is obvious to a reasonable person." *Frasca*, 2014 WL 1385806, at *7 (emphasis added); *see also Luther*, 99 F. Supp. 3d at 1371 (no duty to warn as it was open and obvious that an outside deck that was wet from rain "therefore could be *slippery*") (emphasis added). Norwegian's not giving Sorrels a warning of the obviously wet and potentially slippery condition, without more, cannot establish negligence.

Nonetheless, water is something to expect on a pool deck.  *Andrews v. Naber*, 59 So. 2d 869 (Fla. 1952) (holding that defendant was not required to remove puddle of water on walkway adjacent to pool or to keep it dry and had no liability to plaintiff for the slippery condition of the floor by the swimming pool. The court reasoned that it is a matter of common knowledge that water is constantly thrown upon walkways adjacent to or leading to or surrounding a swimming pool and that the walkways are in a slippery condition); *see also Kessler v. Thomas Corp.*, 73 So. 2d 415 (Fla. 1954) (granting summary judgment where Plaintiff slipped on a wet floor adjacent to a beach and swimming pool); *Tweedale v. City of St. Petersburg*, 125 So. 2d 920 (Fla. 2d DCA 1961) (affirming summary judgment where Plaintiff slipped as he was entering a shower room before using a swimming pool operated by the City of St. Petersburg); *Nichols v. Staybridge Suites*, No. 08 AP-773, 2009 WL 790248 (Ohio Ct. App. Mar. 26, 2009) (relying on *Andrews*, and finding that entry of summary judgment was proper in case involving slip and fall on a wet pool deck because the hazard complained of (i.e. water) was open and obvious and defendant had no duty to warn of said condition).

In this matter, the conditions of the outdoor deck were obvious to a reasonable person through the ordinary use of their senses.  A reasonable person knows that when it is raining, a surface exposed to the elements will become wet and thus slick or slippery due to the presence of water. The testimony and video evidence on this case clearly shows that the presence of the rainwater on the deck was an open and obvious condition.  Therefore, Norwegian is entitled to expect that Plaintiff would perceive the wet—and thus potentially slick—deck through the ordinary use of her senses.  *See Luby*, 633 F. Supp. at 41.

As Sorrels was already aware the deck was wet and therefore could be slick, Sorrels necessarily cannot establish the required element of proximate causation as any warning would not have provided Sorrels with any more knowledge than what she was already able to ascertain through the

ordinary use of her senses.  *Patterson v. Allseas USA, Inc*., 137 Fed.Appx. 633 (5th Cir. 2005) illustrates this point.  In *Patterson*, the plaintiff seaman slipped while descending stairs in wet boots. The District Court found the dangers associated with descending the stairway with wet boots were "reasonably known" to the plaintiff, but still erroneously found that there was a duty to warn of the known danger.  *Id.* at 637-38.  The Fifth Circuit reversed the judgment and held that, because the plaintiff should have known the wet boots presented a potential hazard, the plaintiff could not prove causation given that no instructions would have armed the plaintiff with any more knowledge.  Id. at 638.  As such, there was no negligence.  Similarly, here, no further instruction would have armed the Plaintiff with more knowledge, as she was fully aware of the common sense and obvious dangers associated with a wet deck.  Sorrels' knowledge of the wet deck—a condition Norwegian did not create—was the same as Norwegian's.  Norwegian's yellow plastic cones warning of a wet floor would have only communicated what Sorrels already knew.  (DE 66-6, Winifred Dep. at 17:14-21 (cone warned of a wet floor) and Rai Dep. at 17:10-19 (accord)).

As such, Plaintiff cannot establish liability or causation based on any purported failure to warn. The entry of summary judgment on this theory of liability is proper.  Also noteworthy is that Plaintiff's own expert, Ron Zollo, opined as to a lack of causation in that even with warning signs, there "likely would not be enough time to avoid the loss of walking stability."  *See* Report of Ron Zollo  (DE 69-3) at p. 4.

It is well-settled that each element, including causation, is essential to Plaintiff's negligence claim for the purposes of defeating judgment and Plaintiff cannot rest on the allegations of the complaint.  *See Isbell v. Carnival Corporation*, 462 F. Supp. 2d 1232, 1238 (S.D. Fla. 2006) (granting summary judgment where Plaintiff failed to prove that the cruise line's alleged failures caused her alleged damages).  Plaintiff's failure to prove causation necessarily renders all other facts immaterial.  *Id; see also John Morrell & Co.*, 534 F. Supp. 2d at 1349, citing *Celotex*, 477 U.S. at 322-23 ("Summary judgment is proper 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case'").  Accordingly, summary judgment should be granted as to Plaintiff's claim that Norwegian failed to warn of the condition.

## C.    Norwegian did not create the alleged dangerous condition.

In remanding for further consideration by this Court, the Eleventh Circuit noted that Plaintiffs "argued that NCL created a dangerous condition by failing to properly maintain the pool deck where Sorrels slipped and by failing to warn passengers of the danger."  *Sorrels,* 796

F.3d at 1286. Eleventh Circuit remanded for this Court to apply the Rule 56 standards anew with consideration of the testimony from Zollo to determine whether the record evidence is enough to allow a jury to determine whether Norwegian created a dangerous condition. *Id.* at 1287. As noted above, Norwegian did not fail to warn Plaintiff of the condition as it was open and obvious. Thus, the issue at hand is whether Norwegian created the dangerous condition by virtue of its failure to maintain the deck.

As a threshold matter, the record is devoid of evidence that Norwegian failed to maintain the pool deck. Indeed, Plaintiffs' own expert, Ronald Zollo, testified that (1) there is nothing inherently wrong with a teak deck, (2) he had no knowledge as to when the deck of the *Norwegian Sky* was put in place or specifically how it was maintained, and (3) he had no opinions as to the products recommended to be used to clean and maintain a teak deck. (Ex. "F". Zollo's Dep. at 332:17 – 333:4; 66:10-68:10). To be sure, there is no evidence whatsoever that Norwegian negligently maintained or failed to maintain the pool deck. Moreover, the record is devoid of any evidence of what maintenance procedures and/or materials should be used.

Instead, the evidence shows that the teak deck was regularly maintained and a deep cleaning was performed daily to a particular section of the deck on a weekly rotation, with chemicals specifically formulated for teak. (Ex. "G" Norwegian's Ans. to Interrogatories). There is no evidence whatsoever that this maintenance falls below any standard of care. As such, summary judgment is proper on Plaintiff's allegation that Norwegian created the dangerous condition. "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Morrell,* 34 F. Supp. 2d at 1349 (citing *Ellis*, 432 F.3d at 1236).

Most importantly, Plaintiffs have not offered any testimony or evidence—expert or otherwise—that Norwegian deviated from any applicable standards, rules, practices, or codes with respect to the maintenance of the deck or training of crewmembers. Plaintiffs have simply offered the conclusory allegation that Norwegian failed to train, inspect, and/or maintain the deck, without presenting any evidence whatsoever in support. As a result, Plaintiffs' claims predicated on a theory that Norwegian failed to train or maintain the deck fail as a matter of law and Norwegian respectfully submits that summary judgment must be granted in its favor.

**D. There is no evidence of the existence of a dangerous condition in the first instance.**

Plaintiff affirmatively argued in her Appellate Brief that her suit "was also based upon the ground that the teak deck was unreasonably hazardous to passengers when wet, since portions of

it were insufficiently slip resistant to provide a safe walking surface and that although the Defendant was on notice of this problem, it failed to either remedy it or to warn passengers of it." (Ex. A, Initial Brief at p.15 (citing [D.E. 66 at 1-4; D.E. 66-2]). However, the Eleventh Circuit specifically noted the "problem is that Dr. Zollo did not perform any COF tests along the path Sorrels traveled to determine whether the COF values along that path varied to the same degree as the values obtained from the area Dr. Zollo actually tested. *Sorrels*, 796 F.3d at 1286. Accordingly, there is no evidence that the portions along which Plaintiff actually walked were insufficiently slip resistant to provide a safe walking surface.

Moreover, as noted in Norwegian's Amended Motion to Strike Zollo, filed contemporaneously with this Motion and incorporated and adopted by reference, the only remaining standards which Plaintiff's expert relies on, ASTM F1166-07 and Carnival Cruise Lines' Company Safety Standards, must be precluded as no proper testing[5] was performed in this case to determine whether the wet COF fell below 0.6. These standards are further inapplicable as they were issued over 7 years after construction of the *Norwegian Sky,* and in the case of Carnival's standards, only apply to newbuilds. And there is no evidence of a consensus standard recommending a specific value for COF wet, COF dry, and/or slip resistance at the time of the construction of the *Norwegian Sky*. In light of this, there is no evidence that the deck was unreasonably slippery.

Plaintiff has presented no evidence that a defective condition existed in the area where she fell. As discussed above, rainwater on an outdoor deck is not a dangerous condition. As such, Plaintiff must show that the deck was unreasonably slippery. Plaintiff has failed to present evidence as to same and summary judgment must be granted.

*Frasca*, 2014 WL 1385806, at *10, illustrates how Zollo's failure to test the pertinent portions of the deck to support his theory warrants summary judgment. The Court in *Frasca*, discussed above, granted summary judgment where the plaintiff's expert opined that the deck was unreasonably slippery when wet, but did not test the deck where the plaintiff fell. The Court held that the expert's testimony, without more, was not enough to defeat Norwegian's summary judgment motion. *Id.* Likewise, the Court in *Luther*, 99 F. Supp.2d 1368, discussed above,

---

[5] As further laid out in Norwegian's Amended Motion to Strike Zollo filed contemporaneously with this Motion, Zollo did not conduct tests using the English XL Tribometer that provide a wet coefficient of friction value. Declaration of David Wills, ¶6, Exhibit "J".

granted summary judgment in part on the grounds that there were no record facts showing "that the deck was unusually, extremely, or unreasonably slippery." *Id.* at 1371.

Similarly, here, Plaintiff's theory that Norwegian is liable due to a deck with varying COF cannot stand. Zollo did not test the pathway along which Sorrels walked to determine if the area in question had varying COF or slip resistance. Moreover, Zollo did not use the proper equipment to determine the wet COF standard articulated in the authorities he cites.

Moreover, rainwater on an outdoor deck is not a dangerous condition in and of itself. As noted by the court in *Rodas v. Bi-Lo, Inc.*, No. 607CV029, 2008 WL 2415269, at *3,

> When it rains, people track rainwater into a building's entrance and some of it winds up on the floor. This is common knowledge and thus all are charged with knowledge of the slip–and–fall danger that it represents. Hence, it is not an *unreasonable* risk but an *expected* risk. And it certainly is not a risk over which an owner would have knowledge superior to that of an entering pedestrian.

*See also Partelow v. Edgar*, 219 So. 2d 72, 73-74 (Fla. 4th DCA 1969) (finding that slippery terrazzo floors do not always constitute dangerous hazards).

Summary judgment is proper where there is no evidence to show the existence of a dangerous condition in the first instance. In *Dvorak v. Holiday Inns of Am., Inc.*, 429 F.2d 54 (5th Cir. 1970), the plaintiff was injured when he fell down an outside, uncovered stairway at a Holiday Inn. 429 F.2d at 59. It was daylight and he saw the condition of the stairs. He saw no foreign substance on the steps, nor cracks, chips or any such defects. The steps all looked alike and the step on which he fell looked no different than the others. He had successfully walked down several steps before he fell. *Id.* The court in *Dvorak* found the plaintiff knew that the condition of the steps required him to traverse them with care for his own safety. *Id.* at 59. There was nothing about the condition of the step on which he fell to cause the court to have any doubt that had he used due care for his own safety he could have negotiated this step as he had others. *Id.* Under the circumstances, the court held the only reasonable inference was the plaintiff fell because he failed to use reasonable care to avoid slipping on the stairs. *Id.* at 60.

"The mere fact that an accident occurs does not give rise to a presumption of a dangerous condition" *Isbell*, 462 F. Supp. 2d at 1237; *see also Frasca*, 2014 WL 1385806 at *5 ("[L]iability cannot rest on sympathy alone."). Here, summary judgment is proper as to all of Plaintiff's theories as there is no competent evidence that the deck was unusually, extremely or unreasonably slippery in the first instance.

CASE NO.: 13-CV-21413-COHN/SELTZER

**D.      Sorrels cannot prove Norwegian had actual or constructive notice and cannot establish that Norwegian failed to exercise reasonable care under the circumstances.[6]**

Plaintiff bears the burden of establishing that some conduct or omission by the cruise line fell below the standard of ordinary reasonable care under the circumstances and that this caused the injury. *Monteleone*, 838 F.2d at 65–66. This standard requires, "as a prerequisite to imposing liability, that the carrier have had *actual or constructive notice of the risk-creating condition.*" *Keefe*, 867 F.2d at 1322 (emphasis added).

**1.      Norwegian did not have notice of the alleged varying slip resistance.**

As discussed above, Norwegian did not create the dangerous condition. Accordingly, to survive summary judgment, therefore, Sorrels needs to demonstrate the existence of an issue of material fact as to whether Norwegian had actual or constructive notice of the complained-of condition. Specifically, Plaintiff alleges that the dangerous condition is lack of a sufficient slip resistance on the deck. *See* [D.E. 66, p. 8]. Significantly, at this stage, there is no evidence of any substantially similar incidents which would establish notice. This Court excluded all 31 prior incidents on the grounds that they were not substantially similar, [D.E. 93, pp. 16-17], and the exclusion of same was affirmed by the Eleventh Circuit. *Sorrels*, 796 F.3d at 1288.

In its opinion, the Eleventh Circuit noted that testimony that "warning signs were sometimes posted on the pool deck after rain," is enough to withstand summary judgment as to notice. *Id.* at 1289. However, what the Eleventh Circuit did not consider is that—even in light of the admissible portions of Zollo's testimony—there is no evidence of a dangerous condition in the first instance. And certainly there is no evidence that Norwegian was aware that the deck was *unreasonably* slippery when wet. The issue is not whether the deck could be slippery when wet with rainwater—as this is an open and obvious condition which plaintiff herself had knowledge of. Indeed the signage to which Mr. Rai and Ms. Winifred testified, even when taken in the light most favorable to Plaintiff, merely advised that the deck was wet, not unreasonably or extremely

---

[6] The panel overlooked or misapprehended Norwegian's analysis by its statement that Norwegian did not take issue with the district court's standard that where the shipowner itself creates the dangerous condition, a plaintiff need not show the owner had notice of the alleged condition. *Sorrels*, 796 F.3d at 1287. Norwegian has always maintained there was no dangerous condition, and assuming there was, it did not have notice or a duty to warn. (DE 61, Mot. Summ J. at pp. 6-18).

slippery when wet.[7]  There is no evidence that Norwegian was aware of the dangerous condition alleged—varying and unreasonably slippery slip resistance on the deck.

The evidence instead reflects that Norwegian did *not* have actual or constructive notice of any unreasonably slippery condition.  *See Lee v. Regal Cruises, Ltd.*, 116 F.3d 465 (2d Cir. 1997) (a plaintiff's inability to produce competent evidence that the defendant had actual or constructive notice of the existence of a dangerous condition renders the defendant entitled to summary judgment in its favor); *see also Adams v. Carnival Corp.*, No. 08-22465, 2009 WL 4907547 (S.D. Fla. Sept. 29, 2009).

An extensive body of authority supports the entry of final summary judgment in such a situation.  In *Everett*, 912 F.2d at 1357, plaintiff sued a cruise line over injuries she sustained when she tripped over a metal threshold cover on a fire door, a danger allegedly created by the cruise line. The trial court instructed the jury that the cruise line could be liable for negligently creating or maintaining the premises. *Id.* at 1358.  The cruise line objected to this instruction, arguing that liability must be predicated on notice.  *Id.*  The district court disagreed and gave the instruction to the jury.  *Id.*  The Eleventh Circuit Court of Appeals reversed, holding that there is no cause of action for merely creating, maintaining, or allowing a dangerous condition to exist.  *Id.*  The court further noted that as a prerequisite to imposing liability against the cruise line, a plaintiff must not only show the existence of an unsafe condition, but also prove the defendant had actual or constructive notice of the condition.  *Id.*  The court found error in the jury instructions because there was a possibility the jury may have erroneously found the cruise line liable for the mere creation or maintenance of the defect.  *Id.*

The Southern District of Florida has also affirmed the requirement of notice in *Mercer v. Carnival Corp.*, No. 08–20550, 2009 WL 302274 (S.D. Fla. Feb. 9, 2009).  There the plaintiff-passenger stepped out of the shower in his cabin, walked through the bathroom, into the cabin, and slipped and fell on the hardwood floor.  *Id.*  He alleged Carnival breached its duty of reasonable care

---

[7]  Despite Plaintiff's deposition testimony and interrogatory answers that she fell in a puddle or wet spot, Plaintiff's Response in Opposition to Norwegian's Motion for Summary Judgment stated that "the existence of non-existence of a puddle is irrelevant to the liability issues in this case." "Plaintiff has not asserted that the Defendant is liable for failure to warn her that the deck was wet or that it had puddles. Instead, it has always been the Plaintiff's contention that the Defendant failed to warn her that portions of the deck were slippery when wet, which is a far different proposition." [D.E. 66, pp. 8, 18].

by creating a dangerous condition and failing to warn of the slipperiness of the floor.  *Id.*  Granting summary judgment for Carnival, the court found that the plaintiff failed to "provide any evidence to support his contention that [Carnival] had notice of the allegedly dangerous condition."  *Id.* at *2.  "Instead, Plaintiff merely states that, due to the close proximity of the hardwood floor to the bathroom, Defendant must have known the moisture might accumulate on the hardwood floors or that passengers might walk around with wet feet, and that it would create a dangerous condition."  *Id.*  "Again, the applicable standard of reasonable care requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the dangerous condition.  Plaintiff, however, provides no factual support for his allegation that Defendant had any notice of the allegedly dangerous condition."  *Id.* (citations omitted); *see also Monteleone*, 838 F.2d at 65 (shipowner is responsible for defective conditions aboard ship only when it has actual or constructive notice of them, reasoning that to find liability for merely allowing a defective condition to exist would make the shipowner an insurer of the passenger's safety).

### 2.  Norwegian did not have notice of the alleged puddle.

Apparently realizing the flaws of the open and obvious condition of a puddle on a deck wet from rainwater, Plaintiff changed her theory of the case from falling in a puddle or "wet spot" to falling due to varying insufficient slip resistance.  Interestingly, this new theory came in briefing only after Plaintiff's expert inspected the subject deck.  While Norwegian asserts it is improper during summary judgment briefing for Plaintiff to change the theory of her case from that which was  previously set forth in her deposition and sworn interrogatory answers, Norwegian submits that Plaintiff still cannot prevail on either theory.

The only admissible evidence is that Norwegian did *not* have actual or constructive notice of the alleged puddle in the area where Sorrels fell.  *See Lee*, 116 F.3d 465, *Keefe*, 867 F.2d 1318 (noting that the absence of a finding as to the length of time the "slippery spot" allegedly encountered by the plaintiff had existed prior to her fall precluded entry of judgment in favor of the passenger plaintiff); *see also Adams v. Carnival Corp.*, No. 08-22465, 2009 WL 4907547 (S.D. Fla. Sept. 29, 2009).

In *Cummiskey v. Chandris, S.A.*, 719 F. Supp. 1183 (S.D.N.Y. 1989), the plaintiff-passenger slipped and fell in the ship's bar and claimed the shipowner was negligent in allowing the floor to become wet and slippery.  *Id.*  Even though she alleged that a uniformed person (presumably a crewmember) apologized about the wet floor, thus giving rise to actual notice, *id.* at 1187, the

court concluded that there was no actual notice of any dangerous condition and no evidence that would allow the inference that the unidentified person actually observed the wetness or the accident.  *Id.*  The plaintiff also claimed constructive notice, deriving it from the testimony of the plaintiff's travel companion that "the rug was wet …. The rug was always wet."  However, the court found:

> [P]laintiff slipped on the tile, not the rug. The fact that [plaintiff's travel companion] may have observed wet spots on the rug the day prior to the accident does not create any inference that defendants had constructive notice of wetness on the tile. Lacking such evidence, any effort by plaintiff to demonstrate that the pool drippings or drink spillage was a chronic problem resulting in constructive notice would be pure speculation.

*Id.* at 1188.  Accordingly, the court held that the plaintiff failed to produce any evidence to demonstrate a genuine factual dispute with respect to the defendant's actual or constructive notice of wetness and granted summary judgment in defendant's favor.  *Id.* at 1191.

The present matter is in some respects akin to the facts of *Wish,* 2008 WL 5137149.  In *Wish,* 2008 WL 5137149, the plaintiff–passenger was walking across the open air pool deck to return to her state room.  *Id*. at *1.  At the time, it was raining and the pool deck was wet. *Id*.  The plaintiff fell and suffered injury. *Id*.  In finding for the defendant cruise line, the court held that assuming *arguendo* that it was not raining at the time the plaintiff fell, there was no evidence to suggest how long the water had been on the pool deck before the plaintiff's fall.  *Id*. at *2.  "[A]s there is simply no evidence showing that the rainwater had been sitting on the pool deck for an unreasonable amount of time or that Defendant knew there was rainwater on the deck and acted negligently in failing to remove it."  *Id*.  The court found "that while an unfortunate accident occurred, Defendant was not negligent and thus [could not] be held liable."  *Id*. at *3.  Here there is no evidence as to how long the puddle Plaintiff slipped on existed before the incident.

It is uniformly clear that as a prerequisite to imposing liability, Sorrels must not only show the existence of an unsafe condition, but must also prove Norwegian had actual or constructive notice of the condition. Sorrels is unable to produce any evidence of either.  Sorrels cannot prove Norwegian had actual or constructive notice of the alleged condition and cannot establish that Norwegian failed to exercise reasonable care under the circumstances in the first instance.  As such, summary judgment should be granted as to all of Plaintiffs' theories.

## IV.     Conclusion

The problem presented by this case is of such ancient vintage—and of such perennial

CASE NO.: 13-CV-21413-COHN/SELTZER

recurrence—that even the Romans had a rule for it: *Nemo commodum capere potest de injuria sua propria*, that is, in the translation of the current edition of Black's Law Dictionary (9th ed. 2009), "No one can derive benefit from his own wrongs" (p. 1849).  Yet that is precisely what Sorrels seeks to do; the undisputed facts show Norwegian did nothing wrong and the proximate cause of Sorrels alleged injury was her own failure to exercise reasonable care.

Respectfully submitted,

/s/ Jerry D. Hamilton
Jerry D. Hamilton, Esq.
Florida Bar No. 970700
jhamilton@hamiltonmillerlaw.com
Hector V. Ramirez
Florida Bar No. 484857
hramirez@hamiltonmillerlaw.com
HAMILTON, MILLER & BIRTHISEL, LLP
Attorney for Defendant
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131
Telephone :    305-379-3686
Facsimile:     305-379-3690

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 5, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of Electronic Filing.

/s/ Jerry D. Hamilton
Jerry D. Hamilton

CASE NO.: 13-CV-21413-COHN/SELTZER

### SERVICE LIST

Carol L. Finklehoffe
Finklehoffe@leesfield.com
Leesfield & Partners, P.A.
2350 South Dixie Highway
Miami, Florida 33133
Telephone:      305-854-4900
Facsimile:      305-854-8266
***Counsel for Plaintiff***

Jerry D. Hamilton, Esq.
jhamilton@hamiltonmillerlaw.com
Hector V. Ramirez, Esq.
hramirez@hamiltonmillerlaw.com
Hamilton, Miller & Birthisel, LLP
150 S.E. Second Avenue, Suite 1200
Miami, Florida 33131
Telephone:      (305) 379-3686
Facsimile:      (305) 379-3690
***Counsel for Defendant***