UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

CASE NO: 13-21413-CIV-Cohn/Seltzer

TERESITA SORRELS and
JOSEPH SORRELS, her husband

       Plaintiff,

vs.

NCL (BAHAMAS) LTD., a Bermuda
company d/b/a  NORWEGIAN CRUISE LINE

       Defendants.

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS COUNT II OF PLAINTIFFS' COMPLAINT**

COMES NOW, the Plaintiff, JOSEPH SORRELS, by and through his undersigned attorneys and files his response to the Defendant NCL (BAHAMAS) LTD.'s Motion to Dismiss Count II [D.E. 132] of the Plaintiffs' Complaint and would respectfully show the Court as follows:

The Complaint contains two separate counts arising from of an incident occurring on April 13, 2012 to TERESITA SORRELS, while a passenger aboard the *Norwegian Sky*.  Count I asserts claims on behalf of TERESITA SORRELS herself, while Count II seeks recovery on behalf of JOSEPH SORRELS, her husband, for the loss of his wife's consortium as a result of the serious injury she sustained in her incident of April 13, 2012.  The Defendant NCL's motion is directed only to Count II.  No answer or response has been filed at this time to Count I, which contains the claim of TERESITA SORRELS [D.E. 35].

1

*Sorrels v. Norwegian Cruise Lines*
*Joseph Sorrels Resp to NCL's MTD Count II of Ps Complaint*

**Prior Decisions Prohibiting Loss of Consortium Claims Have Been Invalidated
By The Supreme Court's Subsequent Decision in *Atlantic Sounding Co., Inc. v. Townsend***

The Plaintiff agrees that this issue is governed by federal maritime law.  NCL's motion to dismiss, however, is based upon a series of cases, which derive from the 1990 decision in *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990) that are no longer good law.

Although *Miles* involved the damages recoverable for the death of a seaman under general maritime law where his survivors brought claims for both unseaworthiness and Jones Act negligence, some subsequent cases gave the decision an overly expansive effect so as to limit the damages recoverable for both the death and injury of non-seafarers to those recoverable by seamen under the Jones Act.  *See discussion in CEH, Inc. v. F/V Seafarer*, 70 F. 3d 694 (1st Cir. 1995).  As discussed in more detail below, the  Supreme Court's more recent decision in *Atlantic Sounding, Co., Inc. v. Townsend*, 557 U.S. 404 (2009) has invalidated these cases, which had interpreted *Miles* to surplant remedies that were previously available at common law for nonseafarers.  *See e.g. Doe v. Royal Caribbean Cruises, Ltd.*, 2012 WL 920675 (S.D. Fla. March 19, 2012); *Lobegeiger v. Celebrity Cruises, Inc.*, 2011 WL 3703329 (S.D. Fla. August 31, 2011).  *Also see Boney v. Carnival Corp.*, 2009 WL 4039886, n.1 (S.D. Fla. Nov. 20, 2009). Accordingly, the case law relied upon by NCL is no longer valid.  *See e.g. Barrette v. Jubilee Fisheries, Inc.*, 2012 A.M.C. 1062 (N.D. Wash. 2011)(upholding loss of consortium claim).

Prior to *Miles*, it was well recognized that the spouse of an injured passenger was entitled to recover under the general maritime law damages for his or her loss of consortium.  See discussion in *Barrette*, 2012 A.M.C. at 1071-2.  As observed by the Supreme Court in *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 284 (1980)

At the time *Igneri* was decided, governing law in the relevant jurisdictions was substantially divided over the wife's right to recover for loss of consortium.  But the state of the law is very different today.  Currently, a clear majority of states permit a wife to recover damages for loss of consortium from personal injury to her husband.

In *Miles*, the Supreme Court "grapple[d] with the . . . question [of] whether general maritime law should provide a cause of action for wrongful death based on unseaworthiness," for the survivors of seamen.  *Townsend*, 557 U.S. at 419.  *Miles* did not involve nonseafarers, nor damages recoverable for non fatal injuries.  Nevertheless, a number of subsequent cases construed *Miles* to limit the damages recoverable in all general maritime tort cases for both death and personal injury to those deemed appropriate under the Jones Act, regardless of whether the Plaintiff was a seamen or non-seafarer.

The line of cases relied upon by the Defendant in its motion are the progeny of the early decisions in *Michel v. Total Transportation, Inc.*, 957 F.2d 186 (5th Cir. 1992) and *Murray v. Anthony J. Bertucci Construction Co., Inc.*, 958 F.2d 127 (5th Cir. 1992), in which the Fifth Circuit concluded that *Miles* precluded loss of consortium claims under general maritime law for injuries sustained by seamen and/or those with seamen's status.  Shortly thereafter, the Eleventh Circuit expressly "adopt[ed] the reasoning in [*Michel* and *Murray*]" to likewise hold that loss of consortium claims were not recognized under general maritime law in injury cases involving Jones Act seamen.  *Lollie v. Brown Marine Service, Inc.*, 995 F.2d 1565 (11th Cir.1983).

Several years later, the Eleventh Circuit extended its holding in *Lollie* to preclude the recovery of loss of consortium damages to injury claims asserted by the spouses of non-seamen in *In Re: Amtrack "Sunset Ltd." Train Crash,* 121 F.3d 1421 (11th Cir. 1997).  *Lollie* and *Amtrack* thereafter were expressly relied upon by the cases cited by NCL prior to *Townsend* to hold that loss

of consortium damages were not recognized for the spouses of passengers injured during cruises.

*See e.g.  Micheals v. Carnival Cruise Lines*, 2005 WL 3706388 (S.D. Fla. Jan. 24, 2005); *Isberner v. Celebrity Cruises, Inc.,* 2006 WL 4005569 (S.D. Fla. Dec. 21, 2006); *Albertelli v. NCL Corporation, Ltd.*, 2008 WL 2949513 (S.D. Fla. July 29, 2008);  *In re: Everglades Island Boat Tours, LLC.,* 484 F.Supp.2d 1259 (S.D. Fla. 2007); *Frango v. Royal Caribbean Cruises Ltd.,* 891 So.2d 1208 (Fla. 3d DCA 2005).

In 2009, however, the Supreme Court overturned the underpinning of all of these decisions by holding in *Townsend* that remedies previously existing under general maritime law were not implicitly pre-empted by the existence of a statutory remedy.  Instead, such pre-emption only occurred where expressly indicated by the statute itself.

Accordingly, as pointed out in the case of *Lobegeiger v. Celebrity Cruises, Inc.*, 2011 WL 3703329 (S.D. Fla. Aug. 31, 2011) in dealing with the analogous issue of the recovery of punitive damages:

> Therefore, *Amtrack*, to the extent that it foreclosed a Plaintiff's right to seek punitive damages on a personal injury case under general maritime law, is clearly inconsistent with *Atlantic Sounding II* and no longer the correct rule of decision in the Eleventh Circuit.

*Id.* at *7.  As the Court went on to further explain:

> In *Amtrack*, the Eleventh Circuit announced "[u]nless or until the United States Supreme Court should decide to add state remedies to the admiralty remedies for personal injury, personal injury claimants have no claim for pecuniary damages such as [loss of society, loss of consortium or] punitive damages "1997 AMC at 2973, 121 F.3d at 1429.  Thereafter, in *Atlantic Sounding II*, the Supreme Court decided that punitive damages did not need to be added to the remedies available in admiralty, but instead recognized that <u>punitive damages have traditionally been, and still remain, available as a remedy under general maritime law.</u> Therefore, according to the standard

by which *Amtrack* asked to be judged, it is not longer good law.

*Id.* at n.7 (emphasis added).

Thereafter, in another cruise line case, the court in *Doe v. Royal Caribbean Cruises Ltd.*, 2012 WL 920675 (S.D. Fla. March 19, 2012) reached the same conclusion. The court first noted that the treatment of punitive damages and loss of consortium had been intertwined by the Eleventh Circuit when it had concluded in *Amtrack*:

> In *Lollie v. Brown Marine Service, Inc.*, 995 F.2d 1565, (11th Cir. 1993), we looked unfavorably on the availability of non-pecuniary damages under the general maritime law. Specifically, we held that 'neither Jones Act nor general maritime law authorizes a recovery for loss of society or consortium in personal injury cases.' *Id.*

> Today, we expressly extend our holding in *Lollie* to preclude the availability of punitive damages in personal injury actions brought under the general maritime law.

*Doe* at *3 *quoting* from *In Re: Amtrack "Sunset Limited,"* 121 F.3d at 1429 (emphasis added).

In *Doe*, the court then went on to note:

> Then, in 2009, the Supreme Court decided that *Atlantic Sounding, v. Townsend* . . . holding . . . that punitive damages are available in an action for maintenance and cure. But, as one court in this district has already recognized, the broad reasoning employed by the majority undermines the Eleventh Circuit's holding in *Amtrack* by reversing its assumption about punitive damages. *See Lobegeiger v. Celebrity Cruises, Inc.*, No. 11-21620, 2011 WL3703329, 2011 U.S. Dist. LEXIS 93933 (S.D. Fla. August 23, 2011)(finding that *Amtrak* is no longer good law after *Atlantic Sounding*).

> The Eleventh Circuit's position in *Amtrack* was based on the view that personal injury plaintiffs in maritime actions did not enjoy traditional common law remedies. *In Re: Amtrack*, 121 F.3d at 1429 ("until the United States Supreme Court should decide to add state remedies to the admiralty remedies for personal injury, personal injury claimants have no claim for a list of punitive damages"). But *Atlantic Sounding* clarified that neither the Jones Act, nor the Supreme Court's own precedents, were intended to

supplant remedies that were previously available at common law. In fact, the Supreme Court adopted the *opposite* assumption than that of the Eleventh Circuit in *Amtrack* and stated the general law that punitive damages available at common law historically "extended to claims arising under federal maritime law."

*Id.* at *3 (emphasis added). *Also see Rowe v. Hornblower Fleet*, 2012 WL 5833541 (N.D. Cal. Nov. 16, 2012)(*Townsend* overrules prior opinions based upon *Miles* which preclude the recovery of punitive damages under general maritime law), *In re Complaint of Osage Marine Services, Inc.*, 2012 WL 709188 (E.D. Mo. March 5, 2012)(same); *Wagner v. Kina Blue Water Farms, L.L.C.*, 2010 WL 3566731 (D.Haw. Sept. 13, 2010)(same).

Although both *Doe* and *Lobegeiger* involve punitive damage claims, as observed by the court in *Doe*, the Eleventh Circuit has treated the rationale underlying the recovery of both types of damages in the same fashion and in fact relied upon prior loss of consortium opinions to justify its pre-emption of punitive damage claims in *Amtrack*. Therefore, the holding in *Townsend* is equally as applicable to loss of consortium claims.

All of the cases cited by the Defendant from the Southern District subsequent to *Townsend* fail to address the issue of whether the Eleventh Circuit's prior decision in *Amtrack* has been overruled by *Townsend*. In fact, none of the cases not even mention the *Townsend* decision in any fashion. To the contrary, the cases indicate the rulings were based upon *Amtrack* and *Miles* , which explained herein are no longer valid law. *See, e.g., Ridley v. NCL (Bahamas) Ltd.*, 824 F.Supp. 2d 1355, 1363 (S.D. Fla. 2010)(the Court specifically indicated that its decision was based upon the holding in *Amtrack* and its progeny *Lollie)*; *Moorer v. MSC Crociere, S.A.*, 2011 WL 2069200 (S.D. Fla. 2011)(The Court noted that the Plaintiff failed to cite to any legal authority whatsoever

to support their arguments and the Court therefore simply relied on *Amtrack*); *Gandhi v. Carnival Corp.,* 2014 WL 1028940 (S.D. Fla. 2014)(the Court specifically indicated that its decision was based upon the holding in *Amtrack* and its progeny *Lollie*); *Friedhofer v. NCL (BAHAMAS) LTD*, 2015 WL 588642 (S.D. Fla. 2015)(relying on the holding in *Gandhi*); Tarasewwicz v. Royal Caribbean Cruises Ltd., (S.D. Fla. 2015)(the Court specifically indicated that its decision was based upon the holding in *Amtrack* and its progeny *Lollie*)

Two decisions outside of this circuit have considered the impact of *Townsend* in the context of loss of consortium claims.  In *Doyle v. Graske*, 579 F.3d 898 (8th Cir. 2009), the court recognized that *Townsend* stood for the proposition that the adoption of a statute by Congress will not alter previous well established admiralty rules in the absence of an express intent in the statute to pre-empt such existing law.  Nevertheless, the court concluded that there was "no well established rule, as there is with respect to punitive damages, authorizing loss of consortium damages as a general matter."  579 F.3d at 906.  Accordingly, it held that such actions were precluded by the *Miles* rationale, since such claims are not allowed to be asserted by Jones Act seaman.

In *Barrette v. Jubilee Fisheries, Inc.*, 2012 AMC 1062 (W.D. Wash 2011), the district court reached the opposite conclusion and held that loss of consortium claims are available under the general maritime law as a result of *Townsend*.

> The Court finds that *Townsend* limited the application of *Miles*, and has, as even *Jubilee* concedes, reigned in the "broad reading of *Miles* previously espoused by the lower federal courts.  (DK 2. No. 22 at 2.).  The Court agrees with the *Barrettes* that both the cause of action (unseaworthiness) and the remedy (loss of consortium) existed in general maritime law prior to the enactment of the Jones Act.  Thus, the Jones Act does not preclude recovery for loss of consortium in an unseaworthiness action.

2012 AMC at 1068.

In reaching this conclusion, the court went on to hold

> The Court in *Townsend* arrived at its conclusion to allow punitive damages in a maintenance and cure claim by addressing three legal principles. "First, punitive damages have long been available common law. Second, the common law tradition of punitive damages extends to maritime claims. And third, there is no evidence that claims for maintenance and cure were excluded from this general admiralty rule." *Townsend*, 129 S.Ct. at 2569.
>
> It is uncontested that loss of consortium is long been a cognizable injury at common law. "In fact, since the 17th century, juries have assessed damages for loss of consortium which encompasses loss of society in civil actions brought by husbands whose wives have been negligently injured." *Sea-Land Services v. Gaudet*, 414 U.S. 573, 585, 94 S.Ct. 806, 39 L.Ed. 2d 9 (1974)(abrogated by *Miles*, 498 U.S. 1911 S.Ct. 317 112 (L.Ed. 2d 275).
>
> The common law's recognition of a loss of consortium claims extends to suits brought under general maritime law. The ability to recover for loss of consortium has been discussed in cases dating back to 1860. *See Cutting v. Seabury*, 6 F.Cas. 1083, 1084 (D.Ct. Mass. 1860)(loss of consortium denied on other grounds). Loss of consortium claims became maritime in nature by their inherent connection to the spouse's maritime tort claim. *See New York & Long Branch Steamboat Co. v. Johnson*, 195 F.740, 741-742 (3d Cir. 1912)(allowing husband to recover loss of consortium for negligent injury to his wife, stating that '[w]e are clear that Johnson's claim [for loss of consortium] was recoverable in admiralty."

2012 AMC at 1071-2.

The court's construction of *Townsend* in *Barrette* is the same as reached by the Southern District court decisions in *Doe* and *Lobegeiger*. It is also clear that the reasoning in these decisions is most consistent with the Supreme Court's holding in *Townsend*. As noted in *Doe*, the courts have generally treated the legal underpinnings of both punitive damages and loss of consortium claims in a similar fashion. The Eleventh Circuit itself relied upon prior decisions, which construed *Miles* to pre-empt loss of consortium claims, as the legal basis for its conclusion that punitive damage claim were likewise pre-empted.

The attempt to interpret *Miles* to bar loss of consortium claims brought by the spouses of non-seafarers in suits arising from personal injuries is also inconsistent with a long line of Supreme Court decisions holding that the mere fact that certain general maritime law remedies allow greater or more generous damages than those permitted by statutes which do not expressly pre-empt the field do not violate the uniformity principle. As noted above, *Miles* involved the question of whether non-pecuniary damages could be recovered under the general maritime law in a suit asserted by the survivor of a seaman, where the action was expressly governed by both the Jones Act and Death on the High Seas Act, neither of which permitted the recovery of such damages. The extrapolation of this holding to personal injury suits by non-seafarers, which do not involve the Jones Act, DOHSA or any other statute is not required under the principle of uniformity as construed in other Supreme Court decisions.

In *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970), which recognized a general maritime law remedy for wrongful death where there was an absence of statutory authority, the Supreme Court concluded that neither the Death on the High Seas Act nor the Jones Act were intended to "pre-empt the entire field, destroying the state remedies that had previously existed. *Id.* at 398. The Court further went on to hold that the fact that these other state or general maritime law remedies might be "more generous than the remedy provided by [DOHSA]" did not cause them to run a foul of the uniformity principle. *Id.* at 398.

In *Sun Ship, Inc. v. Pennsylvannia*, 447 U.S. 715, 724 (1980), the Supreme Court observed

> To be sure, if state remedial schemes are more generous than federal law, concurrent jurisdiction could result in more favorable awards for worker's injuries than under an exclusively federal compensation system. But we find no evidence that Congress was concerned about a disparity between adequate federal benefits and *superior* state benefits. [emphasis in the original].

9

This conclusion was repeated by the Supreme Court in *Sealand Services, Inc. v. Gaudet,* 414 U.S. 573, 587-8 (1974)("our decision to permit recovery for loss of society [which is not allowed under DOHSA] aligns the maritime wrongful death remedy with the majority of state wrongful death statutes"); *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 282 (1980)("neither statute embodies an 'established and inflexible' rule here foreclosing recognition of a claim for loss of society by judicially crafted general maritime law.")[1]; *Calhoun v. Yamaha Motor Corp., U.S.A.*, 516 U.S. 199, 214 (1966) ("*Moragne* . . . showed no hostility to concurrent application of state wrongful death statutes.  Indeed, to read into *Moragne* the idea that it was placing a ceiling on recovery for wrongful death, rather than a floor is somewhat ahistorical").  *Also see Just v. Chambers*, 312 U.S. 383, 392 (1941)(application of Florida survival statute to allow recovery for injuries sustained in territorial

---

[1]  As noted by the Court:

> Apart from the question of statutory pre-emption, the liability schemes incorporated in DOHSA and the Jones Act should not be accorded overwhelming analogical weight in formulating remedies under general maritime law. The two statutes were enacted within days to address related problems-yet they are "hopelessly inconsistent with each other." [citations omitted].  The Jones Act itself was not the product or careful drafting of attentive legislative review [citation omitted]; assuming that the statute bars damages for loss of society, it does so solely by virtue of judicial interpretation of the Federal Employers Liability Act, 45 U.S.C. §51 et seq., which was incorporated into the Jones Act [citation omitted].  Thus, a remedial omission in the Jones Act is not evidence of considered congressional policy making that should command our adherence in analogous contexts.  And we have already indicated that "no intention appears that the [Death on the High Seas] Act have the effect of foreclosing any non-statutory federal remedies that might be found appropriate to effectuate the policies of general maritime law."

446 U.S. at 283-4.

waters did not violate uniformity rule, since "there is no repugnancy to [admiralty's] characteristic features either in permitting recovery for wrongful death or in allowing compensation for a wrong to the living to be obtained from a tortfeasors estate").

The Supreme Court's ultimate conclusion in *Yamaha* is equally applicable here:

> When Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is, we have generally recognized, no cause for enlargement of the damages statutorily provided. [citation omitted]. But Congress has not prescribed remedies for the wrongful deaths of non-seafarers in territorial waters. [citation omitted].

516 U.S. at 215. The same is equally as true with regard to the personal injury claims of non-seafarers.

## Conclusion

Accordingly, the decisions relied upon by the Defendant rendered prior to *Townsend* are no longer valid law. The post *Townsend* decisions relied upon by the Defendant which failed to address or even consider *Townsend* are equally invalid as they are premised on law which is no longer good. Consistent with the decisions in *Doe* and *Lobegeiger*, this Court should deny the Defendant NCL's motion to dismiss the loss of consortium asserted by JOSEPH SORRELS.

DATED February 26, 2016.

Respectfully submitted,

By:   /s/ Carol L. Finklehoffe
CAROL L. FINKLEHOFFE (FL.BAR NO.: 15903)
E-mail: Finklehoffe@leesfield.com
**LEESFIELD SCOLARO, P.A.**
Attorneys for Plaintiff
2350 South Dixie Highway
Miami, Florida 33133
Tel:  305-854-4900/Fax:  305-854-8266
*Attorneys for Plaintiffs*

*Sorrels v. Norwegian Cruise Lines*
*Joseph Sorrels Resp to NCL's MTD Count II of Ps Complaint*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **February 26 2016**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of Electronic Filing.

By:   /s/ Carol L. Finklehoffe
CAROL L. FINKLEHOFFE (FL.BAR NO.: 15903)
E-mail: Finklehoffe@leesfield.com

## SERVICE LIST

| | |
|---|---|
| **CAROL L. FINKLEHOFFE** (F.B.N. 0015903)<br>E-mail: Finklehoffe@leesfield.com<br>LEESFIELD SCOLARO, P.A.<br>2350 South Dixie Highway<br>Miami, Florida 33133<br>Telephone:     305-854-4900<br>Facsimile:     305-854-8266<br>*Attorneys for the Plaintiffs* | **JERRY D. HAMILTON, ESQ.**(F.B.N. 970700)<br>Email:<br>jhamilton@hamiltonmillerlaw.com<br>**HECTOR RAMIREZ, ESQ.** (F.B.N. 484857)<br>Email: Hramirez@hamiltonmiller.com<br>**JESSICA CALVO, ESQUIRE** (F.B.N. 484857)<br>HAMILTON, MILLER & BIRTHISEL, LLP<br>150 S.E. Second Avenue, Suite 1200<br>Miami, FL 33131<br>Telephone: 305-379-3686<br>Facsimile:  305-379-3690<br>*Attorneys for Defendant* |