UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 13-CV-21413-COHN/SELTZER

TERESITA SORRELS and JOSEPH
SORRELS (her husband),

      Plaintiff,

v.

NCL (BAHAMAS) LTD., a Bermuda
company d/b/a NORWEGIAN CRUISE LINE,

      Defendant.
_____/

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      Plaintiff argues that the Eleventh Circuit's ruling barred this Court from granting summary judgment. However, the Eleventh Circuit specifically remanded this case for this Court to reconsider whether "the admissible portions of Dr. Zollo's testimony and related evidence" are sufficient to withstand summary judgment. *Sorrels v. NCL (Bahamas)Ltd.*, 796 F.3d 1275, 1285 (11th Cir. 2015). Thus, this Court may properly grant summary judgment as the issue is not whether Norwegian knew the deck could be slippery when wet (which is a matter of common knowledge), but rather whether (1) the dangerous condition existed in the first instance and whether Norwegian either created or knew of the dangerous condition alleged—which Plaintiff now contends is the varying slip resistance.

      Apparently realizing the open and obvious nature of a puddle on a deck wet from rainwater, Plaintiff changed her theory of the case from falling in a puddle or "wet spot" as asserted in her Answers to Interrogatories, to falling due to varying insufficient slip resistance. In her Response, Plaintiff argues she did not slip because of a puddle and is not asserting she "slipped and fell on rainwater." The Response asserts the lawsuit is based on the fact that the Norwegian Sky [deck 11] "had a dangerously low slip resistance in certain parts when wet." Plaintiff's contention is that Norwegian failed to warn her that portions of the deck were slippery when wet. In other words, Norwegian failed to warn Plaintiff that at the particular spot of her

slip and fall, the slip resistance could be different than other areas of the deck so as to cause a dangerous condition. However, there is no record evidence of Norwegian having prior knowledge (notice) of varying slip resistance on the deck causing a dangerous condition, whether at the location of the slip and fall or anywhere else.

Plaintiff relies on Ronald Zollo's testing to argue that the deck was unreasonably slippery. Plaintiff provides no evidence that Mr. Zollo conducted any coefficient of friction testing (because he didn't) on the 100-130 feet of wet teak deck Plaintiff walked on immediately preceding her fall. Moreover, the evidence establishes Zollo failed to use the proper equipment to measure wet COF, which is the measurement specified by the purported standards upon which he bases his opinion that the deck was unreasonably slippery. There is no evidence of a constant slip resistance level on the 100-130 feet of wet deck Plaintiff walked on or that it varied from the spot of the slip and fall. Therefore, argument that Plaintiff's incident was caused by a variance in slip resistance creating a trap, Norwegian knew of this and failed to warn is devoid of supporting evidence.

Plaintiff's Response cites to her deposition testimony, which amounted to nothing more than her admission of lack of knowledge and self-serving assumptions. Norwegian objected to production of the CCTV footage capturing the entire incident so as to obtain Plaintiff's unrefreshed recollection of the incident at deposition. Sorrels' lack of knowledge at deposition was not due to the passing of 15 months from the date of accident. Rather, it appears to have been a strategy to avoid testifying in a manner inconsistent with yet unseen CCTV footage.

### Plaintiff's Statement of Facts

**Paragraph 1**: Norwegian denies Plaintiff's assertions in paragraph 18 of Plaintiff's Response in Opposition. There is no evidence that Norwegian was on notice of "the slippery nature of portions of the teak flooring located on deck 11." The cited testimony of Solange Winifred and Milan Rai do not support the assertion that Norwegian was aware of any issue with a particular "portion" of the deck. Ms. Winifred testified that she was not told the teak deck could get slippery; and deferred to the deck department with respect to the when and where of the posting of signs. *See* Dep. of Winifred, pp. 24-25, attached as **Exhibit A**.

**Paragraph 2**: Norwegian denies Plaintiff's assertions in paragraph 19 of Plaintiff's Response in Opposition. Ms. Winifred's cited testimony does not say that Norwegian was aware

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

of the slippery nature of the teak flooring located at deck 11, much less say that any particular area had a different slip resistance, which Plaintiff is now alleging Norwegian failed to warn her about. The cited examination of Winifred dealt with her duties at the restaurant and began on page 17. Ms. Winifred testified that she would only be involved in cleaning up spills and that she would put up a sign because the floor could get slippery when wet [due to a spill]. The logical meaning of this testimony is that a foreign substance falling on the floor can make an otherwise reasonably safe deck more slippery-the key ingredient being the foreign substance/liquid. Ms. Winifred's testimony in no way shows that any of her supervisors had any knowledge that any particular part of the deck was more or less slippery than another. *See* Dep. of Winifred, pp. 17-19 (**Exhibit A**).

**Paragraph 3:** Norwegian denies Plaintiff's assertions. The cited testimony only indicates that these particular witnesses did not recall or were not aware of a warning sign and not that there were none.

A. **The slipperiness of the deck was open and obvious for which there was no duty to warn.**

Plaintiff sets forth the conclusory argument that she has continued to contend that Norwegian failed to warn her that portions of the deck were unreasonably slippery when wet. However, during briefing on Norwegian's first Motion for Summary Judgment [D.E. 61], and the appeal, Plaintiff specifically identified the theories upon which she was seeking to hold Norwegian liable, to wit: (1) Norwegian failed to warn plaintiff that portions of the deck were slippery when wet [D.E. 66, p. 18] (2) Norwegian created a dangerous condition on the deck by failing to properly maintain it; and (3) Norwegian failed to remedy the insufficiently slip resistant deck. *See* Initial Appellate Brief, p. 15,attached as Exhibit "B". Notably, on these multiple occasions, Plaintiff did not argue the deck was unreasonably slippery. Indeed, Plaintiff notes this point in her Response, asserting "it has always been the Plaintiff's contention that the Defendant failed to warn her that portions of the deck were slippery when wet." *Response* (DE 138, p.10).

Notwithstanding, Plaintiff cannot escape that Courts routinely hold that a surface which is wet can be, by common knowledge, slippery. Therefore, there is no duty to warn of same. *Hackworth v. U.S.*, 366 F. Supp. 2d 326 (D. S.C. 2005); *Coto v. Hyannis Air Serv., Inc.*, No. 2005-191, 2008 WL 5632264 (D. V.I. Jan. 31, 2008); *Gunter v. United States,* 10 F.Supp.2d 534

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

(M.D.N.C.1998); *Faircloth v. United States,* 837 F.Supp. 123 (E.D.N.C.1993); *Frasca v. NCL (Bahamas) Ltd.*, No. 12-20662-CIV, 2014 WL 1385806 (S.D. Fla. April 9, 2014).

Plaintiff's reliance on *Esanu* is misplaced. In *Esanu*, the Court's decision hinged on testimony from the plaintiff that the deck was "extraordinary slippery," "like a sheet of ice," and that "Plaintiff's hands slipped from under him when he tried to pick himself up." *Esanu v. Oceania Cruises, Inc.*, 49 F. Supp.3d 1078, 1080 (S. D. Fla. 2014). This, the Court held, was sufficient to create a genuine issue as to whether there existed an unreasonably dangerous condition. *Id.* at 1081. Here, there was no such testimony. Instead, Plaintiff relies on the testing of her expert, Ron Zollo—whose testing was unreliable as discussed below. Notably, Plaintiff's expert's testing as to the dry coefficient of friction all produced results well above the 0.5 threshold which Zollo asserted was the minimum reasonable standard. Zollo's dry testing on the wood produced results within the 0.8 range. *See Zollo Depo.* (Ex. "C" at 149:16 – 25). Plaintiff's expert erroneously bases his opinion that the deck fell below the wet coefficient of friction standard on testing which was not designed to measure the wet coefficient of friction in the first instance. Moreover, Plaintiff's expert never testified the deck was "unreasonably," unusually, or extremely slippery. Zollo simply asserted, based on his improper testing that some testing of the deck produced values below the minimum reasonable standard of 0.5. *Zollo Depo.* Exhibit "C" at 61:2-7. (noting that the minimum reasonable standard is 0.5).

Plaintiff misconstrues deposition testimony of Norwegian's expert. For instance, Mr. Wills testified that there was variation in the results for all planks tested that day, for the individual strokes on the English XL. *See* Depo. Wills, Ex. "D" at 56:15-24. He did not testify as to a single plank. Moreover, what matters in determination of slip resistance is the average of the individual strokes on a single plank—not the individual stroke. And his averages for dry coefficient of friction testing well exceeded the 0.5 standard identified by Zollo. Further, plaintiff counsel's line of questioning to Mr. Emond was based on the assumption that the slipperiness of the deck differed in the first 100 or 300 feet that she walked on compared to the area she fell. There is simply no evidence of this as Zollo failed to test the path that she walked.

Plaintiff points out that Norwegian cites cases from different jurisdictions for the proposition that "rainwater is an open and obvious condition for which there is no duty to warn." However, because it is common knowledge everywhere that a surface wet from rainwater can be slippery, Norwegian respectfully submits that these cases are instructive and can be applied

- 4 -

universally.  Moreover, *Luther v. Carnival Corp.*, 99 F. Supp. 3d 1268 (S.D. Fla. April 1, 2015) is likewise instructive as –just as here—there was no record facts showing "that the deck was unusually, extremely, or unreasonably slippery." *Id.* at 1372.

Similarly, the holding in *Frasca* that Norwegian was under no duty to warn the plaintiff of the open and obvious condition of the wet deck was not mere dicta as Plaintiff contends.  The Court in *Frasca* expressly noted that it granted summary judgment on "three *independent* bases, each one of which is sufficient to justify summary judgment in NCL's favor." *Frasca*, 2014 WL 1385806 (S.D. Fla. April 9, 2014).  The Court's second basis for granting summary judgment was that NCL was under no duty to warn of the open and obvious condition of a wet deck.  The Court noted that Norwegian is entitled to summary judgment because the "rainy/misty condition itself serves as an adequate warning that the deck would be wet and slick because it is obvious to a reasonable person. *Id.* at *7. Notably, there was expert testimony in *Frasca* that the deck was unreasonably slippery. *Id.* at *10.   Thus, that issue is not dispositive as plaintiff argues.  As the Court in *Frasca* noted, Plaintiff cannot rely on tortured interpretations of deposition testimony to change that plaintiff was aware of the open and obvious danger: namely, an outside deck which was wet from rain or mist and which therefore could be slippery. *Id.* at *7.

The reasoning in *Luther* and *Frasca* are still sound:  a cruise line does not have a duty to protect a passenger from the open and obvious danger of a wet deck and thus Plaintiff cannot show Norwegian breached a duty of care owed to her. *Id.* at *4.  This Court did not address this argument in its original decision granting summary judgment and instead granted it on other grounds.  As such, the Eleventh Circuit did not rule on this argument in its decision, and whether *Frasca* or *Luther* were decided before the Eleventh Circuit's decision in *Sorrels* is irrelevant given that *Sorrels* did not address whether a wet outdoor deck slippery from rain was an open and obvious condition such that summary judgment was warranted.

Likewise, Plaintiff's argument that the cases regarding slip and fall adjacent to pools are inapplicable is without merit.  Plaintiff argues that this Court should discount these cases as the flooring area was being utilized as a pool. Plaintiff ignores that the deck on the *Sky* was an *outdoor pool deck*, which passengers were fully aware was exposed to the elements.  Plaintiffs argue somehow that Norwegian would reasonably anticipate passengers would not be dressed in "pool attire or footwear," but ignores that passengers should dress in footwear appropriate for walking on outer decks obviously exposed to the elements.

- 5 -

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

**B. Mr. Zollo did not measure wet coefficient of friction of the deck and cannot show Norwegian violated any applicable standards based on same.**

Mr. Zollo's deposition testimony fails to raise an issue of fact because nowhere in it does he state that he tested the pathway along which Sorrels walked, nor did he use the proper equipment in order to measure the wet COF. Moreover, there is no evidence that the deck of the *Norwegian Sky* failed to comply with ASTM F1166-07 or the Carnival Cruise Standard. Plaintiff concedes that both the ASTM F1166-07 and the Carnival Cruise Line Standard reference a wet Coefficient of Friction. *See* Plaintiff's Response, Statement of Fact ¶37. The ASTM F1166-07 § 11.12.1.2 ("F1166-07") provides, in pertinent part"[w]alkways, passageways, decks and all other walking surfaces shall have a nonskid surface sufficient to provide a coefficient of friction (COF) of 0.6 or higher measured when the surface is wet." (ASTM F1166-07, attached as Exhibit "E"). Similarly, the Carnival Standard provides for a "minimum static Coefficient of Friction (wet)". *See* Exhibit F. Significantly, there is a crucial difference between measuring the wet COF of a surface versus the "slip index" or "slip resistance" of a surface. And Plaintiff's expert, Ron Zollo, failed to perform any testing to determine the wet COF of the deck where the incident occurred.

Instead, at his inspection of the subject deck on September 16, 2013, Zollo used a device known as the English XL Tribometer ("Tribometer"). *See* Report of Ron Zollo, Exhibit "G." Notably, the Tribometer measures the "slip resistance" or "slip index" of a wet surface. The English XL Tribometer does *not* measure the COF of a wet surface. This difference is a critical one which goes to the very core of the standard. *See Norwegian's Amended Motion to Strike* Zollo, (D.E. 130), adopted and incorporated by reference. The two devices that can be used to determine a wet coefficient of friction are the BOT and the horizontal dynamometer. (*Depo. Wills*, Exhibit "D" at 38:14 – 22; 39:21-25). Neither of these machines were used by Zollo to determine the wet coefficient of friction of the deck of the *Norwegian Sky* in this matter. Thus, any opinions as to whether Norwegian complied with the ASTM F1166 or Carnival Cruise Line cannot be based upon a slip index or slip resistance from an English XL Tribometer.

Moreover, both of these standards are inapplicable. The Carnival standards on their face are inapplicable because they apply to "newbuilds." While Plaintiff argues the *Norwegian Sky* was remodeled in 2008, that fact is not evidence in this case. Moreover, there is no evidence that the subject deck was refurbished as part of the remodel. Moreover, the fact that a ship is

- 6 -

refurbished does not constitute a "newbuild" under Carnival Standards, and the Carnival Standard do not state that they apply to remodels or refurbishments. Otherwise, cruise ships would be required to replace all the floors on their ship every time a part of the ship—no matter how small--is remodeled in some way.

Furthermore, reference to Carnival's Safety Standards is likewise inappropriate and prejudicial as (1) this case involves a Norwegian ship and (2) maritime law clearly holds that a cruise line's internal safety policies cannot form the basis for a negligence claim. See *Liberatore v. MSC Cruises*, Case NO. 09-61693-WPD; *Calderon v. Offen*, 2009 WL 349771 (S.D. Fla. 2009); *Rinker v. Carnival Corporation*, 2010 WL 4811760 (S.D. Fla. 2010); and *Brown v. RCL(UK)* Case No. 10-23531-DLG; *Lapidus v. NCL America, LLC*, 12-21183-CIV, 2012 WL 2193055, at 4 (S.D. Fla. June 14, 2012). As Plaintiff notes, this issue has been more fully addressed in the briefs regarding Norwegian's Amended Motion to Strike Ron Zollo (DE 138). Norwegian's Motion and Reply to same are fully adopted and incorporated by reference.

While Plaintiff relies upon *Keller* to show that the ASTM is applicable despite being promulgated over seven years after construction of the vessel, the Court in *Keller v. United States,* 38 F.3d 16, 27 (1st Cir. 1994), expressly noted that an applicable industry standard may be disregarded if there is a particularly strong showing of the unreasonableness of the customary practice. Here, requiring a vessel to replace its outer deck every time a new standard is promulgated would be unreasonable. Although Plaintiff cites to *Cook v. Royal Caribbean Cruises, Ltd.*, 2012 WL 1792628 (S.D. Fla. May 15, 2012), which rejected efforts to exclude certain provisions of the ASTM, the Court in *Cook* excluded other guidelines or non-binding standards which it found was irrelevant to the matter. *Id.* at *5 (excluding opinions as to the IES "Recommended Practice for Marine Lighting"). The ASTM-1167 standard is irrelevant as (1) there is no evidence that the deck on the *Sky* violated this standard and (2) it was adopted in 2007, seven years after the building of the *Norwegian Sky* and, further, is not binding.

In *Sarmiento v. C & E Associates*, 40 A.D.3d 524, 837 N.Y.2d 57 (1st Dept. 2007) plaintiff claimed to have fallen on a wet marble staircase because the coefficient of friction was below 0.5. The appellate court granted defendant's summary judgment, finding, "the expert's affidavit ... Only vaguely asserts that he measured the [static coefficient of friction] at various locations in the proximal area of the accident on several treads. In the absence of any evidence that the specific location of this accident – i.e. the second step of the stairwell in question – was

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

tested... No triable issue is raised as to the defective condition of the steps." *Sarmiento*, 40 A.D.3d at 526 – 527; *see also Murphy v. Conner*, 84 N.Y.2d 969, 972 (1994) ("[Plaintiff's] expert's examination of a part of the general area is insufficient to preclude summary judgment for defendants."); *Lindeman v. Vecchione Const. Corp.*, 275 A.D.2d 392, 393 (2d Dep't 2000) ("[T]he affidavit [of plaintiff's expert], which was silent as to specifically…what portion of the floor was inspected after the accident, is conclusory and insufficient to establish a triable issue of material fact.").

Zollo's testimony, like those of plaintiffs' experts in *Sarmiento*, *Murphy* and *Lindeman*, is insufficient to establish a dangerous condition as there is no evidence that the wet COF of the floor fell below any inapplicable standard. Accordingly, Zollo's opinions failed to raise an issue of material fact. Without establishing the wet coefficient of friction along the path where she walked, Plaintiff cannot establish her contention of a variance of slip resistance.

**C.   Zollo's testing (in what he determined as the vicinity of Sorrels' fall) shows the teak deck was not defective and did not create an unreasonable risk of harm.**

Mr. Zollo first tested the teak deck onboard the Norwegian Sky in dry conditions. All test values for the dry test were in the 0.8 range. (Ex. "C" at 149:16 – 25). Mr. Zollo then performed four coefficient of friction tests in the area he judged to be where Sorrels fell. The first test in wet conditions yielded results of .61, .70, .54, and .55, which averages .6. (Ex. "C" at 154:7-14 and 168:2-4). The second test was performed in a puddle and yielded results of .62, .46, .50, and .54, which averages .53. (Ex. "C" at 166:6-11 and 168:5-13). In the third test, Zollo attempted to test the values on the rubber located in between the teak deck planks. He deviated from the standard for value testing and instead performed seven tests which yielded values of .51, .6, .46, .43, .48, .64, and .51, which nonetheless average to .52. (Ex. "C" at 169:10-172:25). After having performed these four tests and achieving average values over .50, Zollo noticed what he described to be a "suspicious" looking plank or piece of wood and decided to test it. (*Id.* at 179:4-14). He obtained values below 0.5. However, by Zollo's own acknowledgment, the plank was not just wet with rainwater but had on it a foreign substance and was "slimy." (*Id.* at 179:4-14). Moreover, Zollo could not say what the slimy substance was or whether his test results represented just one plank or multiple planks. (*Id.* at 181:21-23; 182:16-20 and 183:1-6). Moreover, Zollo deviated from the standard procedure for testing. (*Id.* at 183:16-24).

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Mr. Zollo is picking the scenario most favorable to Sorrels by choosing the lowest coefficient of friction from the range of wet decking. But the selection of the lowest value of the coefficient of friction that was possible on the day Zollo tested the specific section of decking cannot withstand scrutiny. This is critical because Sorrels bears the burden of proof on causation. Obviously, acceptance of the lowest coefficient of friction would be in effect allowing the arbitrary choice of a low point value because the true possible range is in fact broader than that selected by Zollo. Notwithstanding, as discussed above, Zollo failed to test for the wet COF of the surface. This is critical where the only standards Zollo now relies upon for his contention that the appropriate coefficient of friction is 0.6, expressly refer to *wet* coefficient of friction. Zollo instead measured the slip resistance, which is a decidedly different measurement than wet coefficient of friction. Thus, even if these standards were applicable—which Norwegian maintains they are not—there is simply no evidence whatsoever that the deck failed to comply with this standard. Plaintiff does nothing to show how the deck was unreasonably slippery. In sum, there is no evidence the teak deck had a dangerously low slip resistance, much less coefficient of friction, as Sorrels would like the Court to believe.[1]

**D.     There is no evidence of any contaminate existing on the deck**

In order to defeat a motion for summary judgment a party must come forward with more than mere speculation or conjecture as to the true nature of the facts. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). Hence, with regard to Sorrels' theory that suntan lotion was present on the decking on the date of the incident (*see, e.g.*, Resp. at p.8, ¶16), it is significant to note that this theory is no more than an assumption on Sorrels' part based on speculation rather than evidence. There is simply no evidence on the record of any contaminant being present on the decking where Sorrels fell. Hence, because Sorrels' theory on the presence of a foreign substance having affected the coefficient of friction on the decking on the date in question is mere speculation, without any evidentiary support, and is without any basis and is insufficient to justify the denial of summary judgment. There is no evidence of any substance that may have been a factor in Sorrels' fall.

---

[1]     Norwegian has moved to strike Zollo as an expert in this case (D.E.139) and moved to strike his Affidavit (DE 153), which is adopted and incorporated by reference. Without the admission of his testimony, Sorrels cannot meet her burden of proof. If the motion is granted, clearly Norwegian's initial burden, the pointing out of an absence of a genuine issue of material fact under *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), has been satisfied. Absent Zollo's purported expert testimony, Sorrels does not have a scintilla of evidence supporting her theories.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

### E.  Actual Notice Has Not Been Established

Plaintiffs argue actual notice of the dangerous condition is established by virtue of the warning signs placed on the deck. However, what Plaintiffs ignore is that these signs have no bearing on the specific dangerous condition Plaintiffs now alleged: a variance in slip resistance. *Esanu* is distinguishable because the caution sign, which was placed on the deck, read "caution when wet." (DE 66-6, Winifred Dep. at 17:14-21 (stating that the cone warned of a wet floor) and Rai Dep. at 17:10-19 (accord)). Here, the signage to which Mr. Rai and Ms. Winifred testified, even when taken in the light most favorable to Plaintiff, merely advised that the deck was wet, not unreasonably or extremely slippery when wet. Conversely, the sign here read what the Eleventh Circuit did not consider—even in light of the admissible portions of Zollo's testimony—there is no evidence of a dangerous condition in the first instance.

### G.  Constructive Notice Has Not Been Established

Plaintiff argues that the length of time of the wet deck establishes notice, because it had been raining on and off throughout the day. However, Norwegian does not dispute that it had been raining and that the deck was wet and therefore open and obvious to all parties, including Plaintiff. In arguing notice of a wet deck, Plaintiff apparently conflates the issues and is reverting back to her original theory that the dangerous condition was the wet deck itself rather than any varying slip resistance. However, the issue at hand is that Norwegian was not aware of the dangerous condition alleged by Plaintiff—namely, the varying slip resistance. And there is simply no evidence that Norwegian was on notice of same or that the deck was unreasonably slippery in the first instance. Nor is there evidence of how long any "wet spot" was on the deck.

*Esanu* is distinguishable for the reasons cited above. Furthermore, Norwegian is not under a duty to block off the area or warn of an open and obvious condition, particularly where it is not on notice of a dangerous condition.

### F.  Norwegian did not create the dangerous condition and there is no evidence of failure to train, inspect, or maintain.

Plaintiff's Response does not address Norwegian's argument that it did not create the dangerous condition. Plaintiff also does not respond to Norwegian's argument that the record is devoid of evidence that Norwegian failed to train its crew, inspect, or maintain the pool deck. Instead, Plaintiff's only response as to the maintenance of the deck is that Norwegian failed to maintain the deck because it failed to put up warning signs. However, this goes toward

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Plaintiff's theory of a negligent failure to warn rather than negligent failure to maintain the deck. As such, summary judgment on these issues is appropriate. *See Abraham v. Greater Birmingham Humane Soc., Inc., 2013* WL 1346534 (N.D. Ala. Mar. 28, 2013)(" the failure to respond to arguments constitutes abandonment or waiver of the issue"); *LSQ Funding Grp., L.C. v. EDS Field Servs.,* 879 F. Supp. 2d 1320, 1336 (M.D. Fla. 2012) (holding that by electing not to respond to Plaintiff's arguments, Defendant necessarily failed to create a genuine issue of fact thus summary judgment was proper).

## Conclusion

Norwegian respectfully submits it is entitled to summary judgment. Norwegian has shown that the condition at the time of the incident was not dangerous and was open and obvious and requiring no warnings. Plaintiff has failed to show a genuine material issue of fact on the issue of notice for the specific alleged hazard she is claiming Norwegian failed to warn her of.

**WHEREFORE**, Defendant, NCL (BAHAMAS) LTD., respectfully requests this Court grant its Motion for Summary Judgment, and such further and other relief this Court deems just and proper.

Respectfully submitted,

/s/     Jerry D. Hamilton
Jerry D. Hamilton (Florida Bar No. 970700)
Hector V. Ramirez (Florida Bar No. 484857)
HAMILTON, MILLER & BIRTHISEL, LLP
Attorneys for Defendant
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131-2332
Telephone:     305-379-3686
Facsimile:      305-379-3690

- 11 -

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Ave., Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 14, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of Electronic Filing.

/s/      Jerry D. Hamilton
Jerry D. Hamilton

## SERVICE LIST

| | |
|---|---|
| Carol L. Finklehoffe, Esq. | Jerry D. Hamilton, Esq. |
| Florida Bar No. 15903 | jhamilton@hamiltonmillerlaw.com |
| finklehoffe@leesfield.com | Hector V. Ramirez, Esq. |
| Leesfield Scolaro, PA | hramirez@hamiltonmillerlaw.com |
| 2350 South Dixie Highway | HAMILTON, MILLER & BIRTHISEL, LLP |
| Miami, Florida 33133 | 150 S.E. Second Avenue, Suite 1200 |
| Telephone:    305-854-4900 | Miami, Florida 33131 |
| Facsimile:    305-854-8266 | Telephone:    (305) 379-3686 |
| *Counsel for Plaintiff* | Facsimile:    (305) 379-3690 |
| | *Counsel for Defendant* |